GEORGIA POWER COMPANY *et al. v.* CITY OF ROME; *et vice versa.*

Nos. 7630, 7660. FEBRUARY 9, 1931. REHEARING DENIED FEBRUARY 26, 1931.

*Colquitt & Conyers, Colquitt, Parker, Troutman & Arkwright,* and *Barry Wright,* for Georgia Power Company *et al.*

*Maddox, Matthews & Owens,* for City of Rome.

Russell, C. J., and Atkinson, Hill, Gilbert, and Hines, JJ., being disqualified, Judge Graham, Eve, Franklin, Persons, and Wood were designated for this case in their stead.

GRAHAM, J. By an act of the General Assembly of the State in 1884 (Acts 1884-5, p. 191), as amended by an act in 1885 (Acts 1884-5, p. 235), the Rome Street Railroad Company was incorporated and authorized to do a street-railroad business in the City of Rome, and to extend its lines through the towns of East Rome, South Rome, Forestville, and De Soto, and as much as five miles beyond the City of Rome on any public road leading into the city. The charters of said towns have since been repealed, and the territory thereof incorporated within Rome. This company, by an ordinance of the City of Rome adopted June 2, 1884, as amended by an ordinance adopted February 14, 1887, and an ordinance adopted April 11, 1884, was granted the right to use the streets of the City of Rome for street-railroad purposes. Under this charter and these ordinances the Rome Street Railroad Company constructed and began the operation of a street-railway system in and upon certain streets of Rome, and from time to time said company and its successors have extended its lines and built other lines on the streets of Rome, and continuously operated such street-railway system from about 1884 until the commencement of this litigation. For many years past the Georgia Power Company and its predecessors in title have been operating street-cars upon these various lines, centering at one point in the city and extending in various directions throughout said city and the vicinity thereof, said lines being known as the North Rome line, the East Rome line, South Rome and Lindale line, and the West Rome line. Along the North Rome line and in its vicinity a number of manufacturing plants were established, many people built their homes, and were dependent on that line for transportation. In 1894 the City Electric Railway Company was

organized, and it acquired all of the property of the Rome Street Railroad Company within the corporate limits of the City of Rome, including its system of car lines, rights and franchises, theretofore used in connection with its street-car system. For many years electric light and power were furnished to the City of Rome and its residents by a corporation known as the Rome Lighting Company; but just prior to December 11, 1899, the Rome Lighting Company sold out to the City Electric Railway Company, which latter company undertook the service rendered by the Rome Lighting Company. On that date communications were submitted from the Rome Lighting Company and the City Electric Railway Company to the Mayor and Council of the City of Rome, giving notice that the City Electric Railway Company had bought out the lighting company and proposed to carry out its contract with the city, as that contract, with all of the assets of the lighting company, had been transferred to the City Electric Railway Company. The mayor and council accepted the notice and ratified the transfer.

On June 29, 1905, at a meeting of the Mayor and Council of the City of Rome, representatives of the City Electric Railway Company appeared and stated that all progress and improvements of the electric system and the railway were blocked by reason of the fact that there was no ordinance granting a franchise to erect and operate an electric plant. Whereupon an ordinance, as amended on July 17, 1905, was adopted, granting the City Electric Railway Company a franchise to erect and operate an electric plant in the city, upon the express condition that the said company or its successors should spend certain sums on its lighting plant and for improving its lighting system and extending its street-railway within fifteen months; which said ordinance was accepted by said company.

On January 1, 1907, the Rome Railway & Light Company acquired by purchase from the City Electric Railway Company all of its properties, rights, and franchises within the City of Rome and its vicinity. The Georgia Power Company, one of the defendants in this case, in the year 1926, under a consolidation agreement entered into with the Rome Railway & Light Company, acquired and became the assignee and transferee of all the properties, rights, and franchises of the Rome Railway & Light Company within the corporate limits of the City of Rome and its immediate vicinity,

including the street-car system, rights and franchises in connection therewith, theretofore used and enjoyed by the Rome Railway & Light Company. The Georgia Power Company and its predecessor, the Rome Railway & Light Company, since December 11, 1899, under the purchase of the street-railway franchise from the Rome Street Railroad Company and the light franchise from the Rome Lighting Company, under a single ownership of both franchises furnished electric-light service and street-railway service in the city.

On September 16, 1929, the Georgia Power Company, without notice to the City of Rome or any of its citizens, cut the trolley-wire on the North Rome line, ceased to render any street-railway service thereon, and abandoned the street-car service on this line. On November 11, 1929, T. S. Sloan, H. J. Arnold, D. C. Stroud, A. S. Dodd, F. J. Dodd, Graham Wright, Lamar Camp, J. R. Reynolds, G. H. Thompson, and Barry Wright, other named defendants in this suit, all residents of the County of Floyd and employees of the Georgia Power Company, at the suggestion of the officers of the Georgia Power Company published notice of their intention to apply to the Secretary of State for a charter under the name of the Rome Railway & Transportation Company, with power to purchase, lease, acquire, own or hold existing lines, or to construct and operate their own railway lines, upon the streets of Rome. The capital stock of this corporation was to be 5,000 shares, without nominal or par value common stock, $1,000 to be paid in before the company commenced business; and it was further provided that this company might at any time during its existence, by a majority vote of its capital stock, wind up its business, dissolve and surrender its charter or any portion of its lines or franchises. Whereupon the City of Rome brought suit in the superior court of Floyd county against the Georgia Power Company and T. S. Sloan and other above-named individual defendants, alleging substantially the foregoing state of facts, which were admitted by the defendants in their answer to said suit.

It was further alleged in said petition, so far as material to an understanding of this case, that at various times from 1899 to the present, under the rights and franchises granted to them by the City of Rome without any compensation to the city, the Georgia Power Company and its predecessors have furnished electricity for

light and power purposes in Rome and adjacent territory, and in so doing have erected upon the streets of Rome the necessary distributing system, including poles, wires, cross-arms, and other adjuncts; that the rights now claimed by the Georgia Power Company to operate a street-car system within the city and to occupy the streets of the city in distributing electricity for light and power have been intertwined and conditioned one upon the other, and the city has dealt with the Georgia Power Company and its predecessors and granted them the rights and privileges largely because of the joint ownership and operation of said street-car system and the electric light and power system; that the operation of said street-car lines and the furnishing of light and power service, by reason of long usage and under a single ownership and under the rights and franchises granted at the time, have become so intertwined and interlocked as to make a separation thereof unfair and inequitable to the City of Rome and its citizens; that the formation of the Rome Railway & Transportation Company, sought by the defendant employees of the Georgia Power Company, was at the instance of the Georgia Power Company; that it is not the intent or purpose of the applicants for the incorporation thereof or of the Rome Railway & Transportation Company, if incorporated, to construct or operate any street-railroad lines within the City of Rome or the immediate vicinity thereof, but the same is to be a dummy corporation to take over the street-railway franchises and property of the Georgia Power Company, with the view of ultimately abandoning, through this dummy corporation, all street-car service in Rome; that under the law the Georgia Power Company could not sell or abandon this street-car service or any portion thereof without first giving up its entire enterprise and surrendering both its light and railway franchises, but to evade the law the Georgia Power Company, aided by these individual defendants, sought to accomplish a severance of the railway franchise from the light franchise by conveying to this dummy corporation the railway franchise in order that it might give up the railway franchise and be relieved of operating the street-railway, which it contended was unprofitable, and, at the same time, hold on to the light franchise, which was profitable; that it was the intention of the Georgia Power Company to transfer to the Rome Railway & Transportation Company when organized its street-railway property in Rome, and to abandon

its street-railway franchise and property in Rome and all street-car operations in that city. Plaintiff prayed that T. S. Sloan and other individual defendants be restrained from further prosecuting their application to the Secretary of State to obtain a charter for a street-railway company, from accepting or organizing under such charter, and from accepting a transfer from the Georgia Power Company of the street-car system owned by the latter in the City of Rome; and prayed that the Georgia Power Company be restrained from conveying its street-railway property in Rome to the proposed new company separate and apart from its light and power property, from separating the ownership of its street-car property in Rome from its light and power property, from abandoning or ceasing to operate its street-car properties in Rome, and from continuing its failure to operate street-cars upon its North Rome line.

The judge sanctioned the petition, ordered it filed, and required the defendants to show cause why they should not be restrained as prayed. The defendants demurred to the petition, the individual defendants answered, and the Georgia Power Company filed a plea to the jurisdiction and an answer. The defendants, while admitting certain facts as hereinbefore stated, denied that the operation of the street-railway and of the light service, by reason of long usage under a single ownership and under the rights and franchises granted at the time, had become so conditioned one upon the other and intertwined and interlocked as to make a separation thereof unfair and inequitable to the City of Rome and its citizens, and denied that there was any obligation on the part of the Georgia Power Company to continue the joint operation of the two properties. While they admitted that the formation of the Rome Railway & Transportation Company sought by the defendant employees was at the instance of the officers of the Georgia Power Company, they denied that the same was to be a dummy corporation to take over the street-railway franchise and property of the Georgia Power Company with the view of ultimately abandoning through this dummy corporation all street-car service in Rome, and denied that the Georgia Power Company was seeking to evade the law by conveying to this corporation its street-railway property. The Georgia Power Company also denied it was its present intention to abandon the street-railway property in Rome, alleging in this connection that it had a large invested capital in the street-car

business in the City of Rome and vicinity which had been appraised or assessed by the Public Service Commission of Georgia at more than $300,000, and that it did not desire to abandon such large investment unless it became thoroughly evident that a failure to abandon it would result in a policy of throwing good money after bad; that if the street-railway business would not earn enough to operate without loss, it had the right under the law to abandon the service and surrender the franchise therefor without giving up its light and power franchise; that the street-railway and light franchises are separate, and the power company has the right under the law, if it sees proper, to sell the street-railway franchise and property and at the same time retain the light and power franchise. It admits that in the event the Rome Railway & Transportation Company is organized it may acquire a part or all of the capital stock thereof, which it contends it is authorized to do under the law, and that if a satisfactory contract may be had with the new company it will convey to this company its street-railway franchise and property in the City of Rome.

The Georgia Power Company admitted abandonment of street-car service on the North Rome line, but asserted that in lieu of such service it had established a modern bus service along the identical route of the North Rome car line, with the same schedules, fares, and transfer privileges as the North Rome car line had had, and that this bus line extended beyond the terminus of the car line, serving additional territory and people. It was denied that many people were dependent on this line for transportation, for the reason that their dependence had been supplied by the institution of bus transportation. The company further asserted, in this particular, that in its opinion the bus service was much superior to the street-car service and that the same was established and the car line abandoned when it was given notice that the plaintiff intended to make large assessments against it for paving; and to force defendant to incur large costs of thousands of dollars for rebuilding and repairing its track on parts of the North Rome line. The company further alleged: "It is specifically to be understood, however, that this defendant does not intend in any way to estop itself from asserting any of its legal or constitutional rights hereafter; but its present intent and purpose in good faith is to endeavor to make the transportation business in Rome successful, and in some

instances this may involve the substitution of bus service for street-car service and may involve certain experiments and tests."

On the hearing the court did not pass upon the demurrers, but, upon considering them with the evidence and the pleadings, granted a temporary injunction restraining the Georgia Power Company from transferring its street-car property separate from its light and power property, from separating the ownership of its street-car property in Rome from its light and power property, and from abandoning or ceasing to operate its street-car properties in Rome; but refused to enjoin it from continuing its failure to operate street-cars on its North Rome line, and refused to enjoin the other defendants from obtaining the charter for the Rome Railway & Transportation Company and organizing thereunder, but enjoined them from accepting a transfer from the Georgia Power Company of its street-car system in Rome. To the grant of temporary injunction the Georgia Power Company and other defendants excepted. The City of Rome by cross-bill excepted to the refusal to grant injunction restraining the defendants from obtaining the charter and organizing the new company thereunder, and to the refusal to restrain the Georgia Power Company from abandoning street-car service on the North Rome line.

It appears from the record of incorporation of the Georgia Power Company, of file in the office of the Secretary of State of Georgia, that, by a joint agreement entered into on November 16, 1926, the Georgia Power Company and the Rome Railway & Light Company and other street-railway, power and light companies of Georgia were merged and consolidated into one company, and thereupon chartered on February 25, 1927, under the name and style of Georgia Power Company, for a period of 101 years, with its principal office located in the City of Atlanta, Fulton County, Georgia. This agreement of incorporation recites, among other things, as follows: .

"Whereas, . . the parties hereto desire to consolidate the constituent corporations and their property, rights, and franchises, upon the terms and conditions herein prescribed, . . and for the purpose of obtaining motive power for the operation of such railroads; and whereas such consolidation is for the benefit of the public as well as for the benefit of the constituent corporations and their stockholders: Now, therefore, in consideration of the premises . . it is hereby agreed: . . The constituent corporations

and their property, rights, and franchises are hereby consolidated, and shall constitute a corporation formed by such consolidation, to be known as Georgia Power Company (hereinafter called the consolidated corporation), which shall possess all of the rights, privileges, powers, and franchises, as well of a public as a private nature, of each of the constituent corporations. . . Upon the making of this joint agreement and the filing of the same in the office of the Secretary of State, and upon the issuance by the Secretary of State of a certificate that the provisions of sections 2607, 2608, and 2609 of the Code of Georgia of 1910 have been complied with, the consolidated corporation shall thenceforth constitute a corporation by the name provided in this joint agreement. Then and thereafter the consolidated corporation shall be possessed of all the rights, privileges, powers, and franchises, as well of a public as of a private nature, and be subject to all the duties, liabilities, debts, and obligations of each of the constituent corporations participating in this joint agreement; and thereupon the corporate franchises, entity and existence of the constituent corporations shall pass to and be consolidated into the consolidated corporation, and the consolidated corporation shall be fully vested therewith, and the corporate existence of the constituent corporations shall cease except as consolidated into the consolidated corporation or as may be requisite for carrying out the purposes of this joint agreement, or as continued by statute."

■ It is insisted that the superior court of Floyd county was without jurisdiction of the case. The trial judge found against this contention. This finding under the pleadings and evidence was proper. "Equity cases shall be tried in the county where a defendant resides against whom substantial relief is prayed." Civil Code (1910), § 6540. An equitable petition asking substantial relief against both defendants may be brought in the county of either. *Hand Trading Co.* v. *Citizens Bank of Moultrie*, 160 *Ga.* 448 (128 S. E. 65). The Georgia Power Company has its legal residence in Fulton County, while the other defendants, referred to as individual defendants, have their residence in the County of Floyd. It was alleged, and the court was authorized to find, that the Georgia Power Company and its employees combined to form a dummy or irresponsible corporation, the Rome Railway & Transportation Company, to which it could transfer its street-rail-

way system in Rome and relieve itself of any obligation to operate said system, with the ultimate purpose of abandoning and giving up such property without surrendering the electric power and light franchise and property incident to said railway system. These individual defendants, it is true, were employees of the Georgia Power Company and were acting at the suggestion of the power company; yet they were more than mere employees or agents of the power company—they were individual citizens claiming to act on their own responsibility and with the intent and purpose to organize said Rome Railway & Transportation Company and then take over said street-railway system. They were not only parties to this scheme but were interested in the transaction. Among other things, the petition sought to enjoin the Georgia Power Company from transferring the property in such manner to these individual defendants or any corporation organized by them, and also to enjoin them from accepting such transfer and from organizing any corporation to accept such transfer. All parties to the transaction and interested in the outcome of the same are proper parties to any action seeking to avoid it.

■ But it is contended that the petition is multifarious, and that there is a misjoinder of parties defendant; and the question of venue as to the individual defendants was in this manner raised by the demurrer. It has already been pointed out that each of the defendants had some interest in the suit common to all, although there were some matters in the suit in which all may not have had a common interest. "A bill is not multifarious because all of the defendants are not interested in all of the matters contained in the suit. It is sufficient if each party has an interest in some matter in the suit which is common to all and that they are connected with the others." *Brown* v. *Wilcox,* 147 *Ga.* 546 (94 S. E. 993). Hence we conclude that the petition was not multifarious because of a misjoinder of parties or causes of action, and that the court did not err in retaining jurisdiction of the case.

■ The next question arises on the authority of the City of Rome to bring the action. It is contended by the defendants that the City of Rome has no such interest as will support the bill with it as sole party plaintiff. This point does not appear to be well taken. The city has an interest in all street-railways incorporated under the Code and proposing to do business in the city. "No

street-railroad incorporated under this division shall be constructed within the limits of any incorporated town or city without the consent of the corporate authorities; and provided further, that all such street-railroad companies incorporated under this division shall be subject to all just and reasonable rules and regulations by the corporate authorities, and liable for all assessments and other lawful burdens that may be imposed upon them from time to time." Civil Code (1910), § 2600. "Such street-railroad may furnish steam, and has the power to use the streets and public places to lay and maintain their pipes for conveying and distributing steam, but before any of such companies shall be entitled to use any of the streets of any city the consent of the city shall be obtained." (§ 2606). "Such companies may operate electric plants and furnish electric light and power to any city of the county in which said railroad is located, and also to corporations or private citizens doing business within the limits thereof." (§ 2611). The right of street-railroad companies to furnish light and power to any county, city, company, or private citizen was not extended until done so by the act of 1923. Before commencing such business in Rome, the predecessors in title of the Georgia Power Company recognized that they could not do such business in the city without first obtaining the consent of the city to use its streets for such purposes. Therefore franchises were applied for and granted to its predecessors by the city to use its streets for such purposes. In accepting these franchises the Georgia Power Company and its predecessors obligated and contracted with the city to maintain and operate such street-railroads. *Macon Railway & Light Co.* v. *Corbin,* 155 *Ga.* 197 (116 S. E. 305). "An ordinance whereby a franchise is granted which is accepted and acted upon by the grantee becomes a contract." Elliott on Contracts, § 604.

A railroad company which succeeds to the rights and privileges conferred upon another by its charter becomes also subject to the same liabilities. *Montgomery &c. R. Co.* v. *Boring,* 51 *Ga.* 582; *Tompkins* v. *Augusta &c. R. Co.,* 102 *Ga.* 436 (30 S. E. 992). Not alone is the Georgia Power Company bound by this rule, but it is also bound under its contract of consolidation and incorporation thereunder with the Rome Railway & Light Company to maintain and operate the street-railroad system thus acquired by it in the City of Rome. All parties to a contract are proper parties to any action

affecting their interest therein. A franchise granted by a city "is intended to be exercised largely for the public good, and the city has an interest therein which entitles it to question the validity of any transfer or attempted transfer of the same by its grantee." Cumberland &c. Co. *v.* Evansville, 127 Fed. 187. It clearly follows that the City of Rome may institute and maintain the suit in its corporate name.

■  The Georgia Power Company complained that the court restrained it from abandoning its railway property, insisting there was no evidence to authorize the finding. This court can not say the judge was not justified in his finding herein, when, on account of dissatisfaction because of threatened paving assessments, the power company had cut off one branch of its railway system; and it expressly states in its answer that in some instances its endeavor to make the transportation business in Rome successful may involve the substitution of bus service for street-car service and may involve certain experiments and tests. Irrespective of any rule that a public-service company may not be compelled to serve, even in a branch of its business, at a rate which is confiscatory (and we are not now holding that the Georgia Power Company has or has not the right—such not being necessary to decide in this case—to abandon its street-railway property in Rome without also surrendering its light franchise), the Georgia Power Company may not lawfully, without the consent of the City of Rome, dismember its street-railway system therein by chopping off each offending or unprofitable member one at a time, and thus render the street-railway body helpless and useless, thereby evading its duty and obligation to the city to maintain and operate the street-railway system therein under the franchises granted, accepted and retained by it from the city. *Macon Railway & Light Co.* v. *Corbin,* supra.

■ ■  The bone of contention in this case is contained in the question as to whether or not the Georgia Power Company may, under its acquired franchises from the city, separate its street-railway business in Rome from that of its light and power business and sell the railway business, and at the same time retain the light and power business, the power company's right to the street-railroad business having originated in a franchise granted by the city to the Rome Street Railroad Company, and its right to the light business in the grant of a franchise by the city to the Rome Lighting

Company. A decision on this point, however, might not be necessary to determine this case. Under express statute of this State a street-railroad company may sell its railroad property and franchises. "All street-railroad companies may lease or sell their lines of road, franchises, and other property to any other corporation created by the laws of this State for street-railroad purposes." Civil Code, § 2614. But this statute contemplates a bona-fide sale to a purchaser able and willing to carry on and maintain the street-railroad business in the city, as obligated by the street-railroad company in acceptance of the franchise to do such business. The statute does not contemplate the sale or transfer of the property to a dummy or irresponsible corporation unable to perform the obligations to carry on the business under the franchise, nor does it contemplate the sale or transfer of the property when it is the obvious purpose of the transaction to ultimately abandon the property and thus evade the duty to maintain and operate the same. Under the admissions and facts of the case the judge was authorized to find, on the hearing, that the sale and purchase proposed of the street-railroad property was not such sale or transfer as is provided for by the statute permitting the sale and transfer by street-railways of their railroad franchises and property.

This case could very well be determined upon the foregoing ruling, without wading into deeper and more turbulent waters. Nevertheless, on account of the bone of contention in the case and of its importance, taking also into account the attention devoted hereto by counsel for each party, we will now consider the main and controlling question in the case: Are the street-railroads and franchises in the City of Rome and the light and power property and franchises granted as aforesaid separate and distinct entities and still existing as such, or have they become consolidated and merged into one franchise and the properties thereunder so conditioned one upon the other and so interlocked and intertwined as to be interdependent and inseparable? It is interesting to note that there is a line of authority, in decisions cited by counsel for the Georgia Power Company, to the effect that when two companies consolidate, the franchises of each continue to exist and do not lose their separate entity. For instance, it has been held: "Consolidation is not sale; and when two companies are authorized to consolidate their roads, it is to be presumed that the franchises

and privileges of each continue to exist in respect to the several roads so consolidated. Green County *v.* Conness, 109 U. S. 104 (3 Sup. Ct. 69, 27 L. ed. 872). This case and the cases cited by counsel arise, however, on a different state of facts from the present case, and it must also be borne in mind that "Whether the consolidation of two corporations works a dissolution of them both, and creates a new corporation, must depend upon the statute under which the consolidation takes place and the intention therein manifested." Central Railroad &c. Co. *v.* Georgia, 92 U. S. 665 (23 L. ed. 757).

The Georgia Power Company acquired its franchises, both street-railway and electric light and power franchises, whether they had become at the time one inseparable franchise or not, through its consolidation and merger with the Rome Railway & Light Company. The Rome Railway & Light Company had obtained the same in this manner: In 1884, by an act of the legislature the Rome Street Railroad Company was incorporated and authorized by the City of Rome to and did in said city operate a street-railroad. Under power in a deed of trust to secure bonds of this company all of its properties, including all of its rights, privileges, and franchises, were sold, on July 5, 1894, to John M. Bonham, who conveyed the same to J. King and others on September 5, 1894. Thereupon these transferees applied to the Secretary of State, reciting these facts, for the purpose of organizing anew and to be substituted for the original incorporators and stockholders of the Rome Street Railroad Company, for a charter under the name of the City Electric Railway Company, with all the rights, powers, privileges, franchises, and duties of the said Rome Street Railroad Company. Prior to December 11, 1899, electric light and power was furnished the City of Rome by the Rome Lighting Company, which just prior to said date sold out to the City Electric Railway Company, which latter company undertook the service rendered by the Rome Lighting Company. Both of these companies gave notice to the Mayor and Council of the City of Rome that the City Electric Railway Company had bought out the Rome Lighting Company and proposed to carry out its contract with the city, as that contract, with all the assets of the Lighting Company, had been transferred to the City Electric Railway Company. The mayor and council accepted the notice and ratified the transfer.

Later, in June, 1905, representatives of the City Electric Railway Company informed the Mayor and Council of Rome that all progress and improvements on the electric system and railway were blocked by reason of the fact that there was no ordinance granting a franchise to erect and operate an electric plant. Whereupon a franchise was granted the City Electric Railway Company to erect and operate an electric plant in the city, upon condition that the company should spend certain sums on its lighting plant and system and extending its railway. This franchise was accepted by the City Electric Railway Company. In 1906 the City Electric Railway Company was changed to the Rome Railway & Light Company, and this company was substituted for the City Electric Railway Company, succeeding to all of its powers, rights, franchises, duties, and obligations, and thereby all of the railway property, light and power property, and franchises in the City of Rome, held and enjoyed by the City Electric Railway Company, passed to the Rome Railway & Light Company.

In the agreement of consolidation and merger of the Rome Railway & Light Company into the Georgia Power Company it was expressly stipulated that the parties desired to consolidate the constituent corporations and their property, rights, and franchises for the purpose of obtaining motive power for the operation of such railroads; that such consolidation was for the benefit of the public as well as for the benefit of the constituent corporations and their stockholders. Under said agreement and incorporation thereupon, all of the property, franchises, and rights of the constituent corporations were sold and passed into the Georgia Power Company. Under the law at the time of the organization of the City Electric Railway Company and when it acquired both the street-railroad property and all property, franchises, and rights thereof in Rome, a light company had no authority to operate a street-railroad, but a street-railroad company was given the right to furnish light and power to any city of the county in which the railroad was located, and to corporations or private citizens within its limits. The light business was a mere incident to the railroad business, but neither could successfully operate without electric power. During this time and for a period of about thirty years these companies, by the consent of the city, under a single and joint ownership of the franchises to operate a railway and light business in the city and

for the purpose of operating the same, erected upon the streets of Rome, by its consent, the necessary distributing system, including poles, wires, cross-arms, and other adjuncts. The right to operate the railroad business and the right to operate the light and power business, by long usage and under a single ownership and joint operation, have become conditioned one upon the other, intertwined, interlocked, and interdependent. In the meantime the city has dealt with these companies and granted them concessions as though their rights and franchises and business thereunder were a single and entire enterprise.

It would seem that the intention of the parties in permitting the City Electric Railway Company to take over the Rome Street Railroad Company and the Rome Lighting Company and their respective franchises and property, and the City Electric Railway Company to be changed to the Rome Railway & Lighting Company, and the Rome Railway & Lighting Company to be consolidated and merged into the Georgia Power Company, was to work a dissolution of the old companies and to merge and consolidate the railway and light franchises into a single and inseparable franchise, with the right and obligation thereunder to operate both a street-railroad and a light and power business in Rome. In State v. Broad River Power Co., 157 S. C. 1 (153 S. E. 537), the Supreme Court of South Carolina, in a well-considered opinion, under a state of facts similar to this case, held: "Furthermore, the electric railway service is connected with the electric light and power business and is inseparable from it, by reason of the manner of construction and operation as well as by the charter and franchise contract. It appears from the record that during the thirty-six years the company has operated, the company has erected power plants for the generation of electricity to be used for operating the railway system and to be sold for light and power. It has erected poles on the rights of way it has acquired, and hung wires on the poles to be used for the purpose of the transmission of such electric power, for the operation of the railway, and for sale to the public, for lighting purposes, and for power to be used for other purposes. . . Thus these lines particularly were constructed and acquired directly under the company's primary franchise from the State for the operation of the electric street-railway, light and power business. Thus for nearly forty years these phases of this business have gone hand in

hand. They have grown and developed from their infancy in 1891 to their present maturity. They are as inseparable as parts of the human body, and can not now be operated independently. . . The patrons of the railway service have therefore contributed to the general upbuilding of the property and system which the company now desires to use entirely for the electric light and power and gas business. To permit this would mean the destruction of the electric railway service, for the railway service can not be carried on in the community in question without the use of the property which is now being used and operated for electric light and power purposes." See also Broad River Power Co. *v.* S. C. (same case), 280 U. S. 551 (50 Sup. Ct. 162, 74 L. ed. 609). In the light of the facts of the case and the foregoing authority, keeping in mind the familiar rule that franchises are to be construed strictly and that construction adopted which works the least harm to the public, the conclusion is reached that the court did not err in holding that the street-railroad franchises and system in Rome and the light and power franchises and system are conditioned one upon the other and so intertwined and interlocked that the same are interdependent and inseparable; that the Georgia Power Company now holds each under one merged and uniform franchise, authorizing and requiring it to furnish both street-railroad and light and power service in the city; and that for all intents and purposes the street-railroad, light and power system in Rome is one company, one franchise, one business.

At the time the statute was passed (Acts 1890-1, p. 170, Civil Code, § 2614) authorizing street-railway companies to sell their roads, franchises, and other property, street-railroad companies were not authorized to operate electric plants and to sell and furnish electric light and power. In the passage of this act the General Assembly hardly foresaw that such companies would in the future be granted the privilege to, and would also in connection with and incident to their street-railroad business, engage in the light and power business. When it is considered how the street-railroad companies under the authority subsequently enacted acquired the light franchise and property in Rome and intertwined and interlocked the same with its street-railroad franchise and property, the conclusion is reached that the legislature did not have in mind the situation that we now have in hand. If the case could have been

foreseen, the authority would have hardly been given to sell the railroad franchise and property without carrying with the sale also a transfer of the light and power franchise and property. A fairer construction of this statute to the public, and a more reasonable interpretation in view of the nature of street-railroad business at the time it was adopted, is to hold that the same does not authorize a street-railroad company to sell its railroad property separately from its light and power property. It is therefore decided that the Georgia Power Company may not, under the statute, split its street-railroad, light and power franchise in Rome by selling its railway property and retaining its light and power property in the city.

7, 8. In the cross-bill of exceptions it is complained that the court should have enjoined the application for the charter of the Rome Railway & Transportation Company. The charter has since been granted. The question is therefore moot, and this court will not pass upon it. Also error is assigned upon the refusal of the court to enjoin the power company from continuing its failure to operate cars on its North Rome line. The court so refused on the ground that the injunction sought was mandatory. "An injunction can only restrain; it can not compel a party to perform an act." Civil Code, § 5499. The Georgia Power Company had already, on September 16, before commencement of the action on November 29, cut the trolley-wires and abandoned the street-car service on this line. The act complained of was completed. The court did not err in refusing the injunction on this ground.

*Judgment affirmed on each bill of exceptions. Beck, P. J., and the Judges heretofore named concur, except Eve, J., who dissents, and Wood, J., absent.*