S04Q0128. CITY OF MACON v. ALLTEL COMMUNICATIONS, INC.
(596 SE2d 589)

HINES, Justice.

This case is before the Court on a certified question from the United States Court of Appeals for the Eleventh Circuit.[1] *Alltel Communications v. City of Macon*, 345 F3d 1219 (11th Cir. 2003). The

---

[1] 1983 Ga. Const., Art. VI, Sec. VI, Par. IV; OCGA § 15-2-9.

question certified is:

> Whether Section 18-153 of Article VII of Chapter 18 of the Code of Ordinances of the City of Macon, Georgia, as amended in July 1999, is preempted by state law or otherwise invalid so as to preclude the charge of the subject fees in excess of those provided for under Georgia Department of Transportation Rule 672-11-.03.

The answer is that the City of Macon ordinance in question is preempted by OCGA §§ 32-4-92 (a) (10), 32-6-174, and Georgia Department of Transportation Rule 672-11-.03 to the extent that the permit fees authorized by the ordinance exceed the rate charged by the Georgia Department of Transportation on its rights-of-way, and are otherwise unrelated to the reasonable costs of recouping the expenses incurred by the City of Macon as a result of allowing Alltel access to its public rights-of-way.

## BACKGROUND

The parties entered into the following joint statement of material facts not in dispute. Alltel is a telecommunications company that provides telephone service throughout portions of the United States, including parts of Georgia, by the use of a telecommunications network that includes fiber optic cable. To establish a telecommunications network and the provision of telecommunications service in Georgia, Alltel, among other things, beginning in July 1997, contracted with Georgia Power Company ("Georgia Power") to lease portions of Georgia Power's existing easements and rights-of-way for the installation of fiber optic cable; filed tariffs required by the Georgia Public Service Commission ("PSC"); and, on or about July 4, 1997, obtained "Underground or Aerial Fiber Optic Cable Permit 15" (the "Permit") from the City of Macon ("the City").

In 1997, Alltel installed fiber optic cable on utility poles owned and maintained by Georgia Power along city streets within the City of Macon (the "Macon ROW"). Georgia Power's utility poles are lawfully located in the Macon ROW. The Alltel fiber optic cable is located on the Macon ROW and is not located on or within the Georgia Department of Transportation ("DOT") ROW. Subject to the Permit, Alltel installed a total of 25,555 feet of fiber optic cable on Georgia Power utility poles within the Macon ROW. The Alltel fiber optic cable that is the subject of the Permit and is at issue is trunk communications cable utilized by Alltel exclusively for the purpose of the transmission of intrastate and interstate long distance telecommunications.

From July 1997 through April 11, 2000, under the Permit, the

City charged Alltel $2.00 per foot per year as a permit fee for right-of-way usage pursuant to Section 18-153 of Article VII of Chapter 18 of the Code of Ordinances of the City of Macon (the "Ordinance"). Alltel, without objection, paid the City this charged rate as a permit fee for right-of-way usage pursuant to the Ordinance. The purpose of the Ordinance is to govern the compensation charged by the City in its franchising and licensing of telecommunications providers and in its management of the use of the public rights-of-way within the corporate limits and boundaries of the City.

On or about July 8, 1999, the City adopted an amendment to the Ordinance to increase the permit fee charged by the City for wire, cable, or conduit located in a city street rights-of-way from $2.00 per foot to $4.50 per foot per year (the "Amended Ordinance").[2] Under the Amended Ordinance, the City charges $4.50 per foot per year as a permit fee to all entities for placing wires, cables, and conduits in the rights-of-way of City streets. Pursuant to OCGA § 32-6-174,[3] the DOT has promulgated Rule 672-11-.03 which provides the Permit

---

[2] The Amended Ordinance states in pertinent part:

### COMMITTEE AMENDMENT

AN ORDINANCE OF THE MAYOR AND COUNCIL OF THE CITY OF MACON, GEORGIA, TO AMEND SECTION 18-153 OF THE CODE OF ORDINANCES SO AS TO INCREASE THE PERMIT FEE FOR PLACING WIRES, CABLES AND CONDUITS IN THE RIGHT-OF-WAY OF CITY STREETS FROM $2.00 PER FOOT TO $4.50 PER FOOT; TO REPEAL CONFLICTING LAWS; AND FOR OTHER PURPOSES.

BE IT ORDAINED by the Mayor and Council of the City of Macon, Georgia, and it is hereby so ordained by the authority of the same that Section 18-153 of Article VII of Chapter 18 of the Code of Ordinances of the City of Macon, relating to the permit fee for the placement of wires, cables and conduits in the right-of-way of city streets, is hereby amended so as to increase the permit fee from $2.00 per foot to $4.50 per foot, by deleting Section 18-153 in its entirety and inserting in lieu thereof a new Section 18-153 to read as follows:

Sec. 18-153. Permit Fee.

The fee for such permit shall be four dollars and fifty cents ($4.50) per foot of wire, cable or conduit occupying such street per year.

All ordinances or parts thereof in conflict with this provision are hereby repealed.

[3] OCGA § 32-6-174 provides:

The department may promulgate reasonable regulations governing the installation, construction, maintenance, renewal, removal, and relocation of pipes, mains, conduits, cables, wires, poles, towers, tracks, traffic and other such signals, and other equipment and appliances of any utility in, on, along, over, or under any part of the state highway system or any public road project which the department has undertaken or agreed to undertake or which has been completed by the department pursuant to its authority. In addition to the requirements of such department regulations, it shall be the responsibility of the utility to obtain whatever franchise is required by law.

Fee Schedule for Long Distance and Trunk Communications Cables.[4] On April 11, 2000, the City submitted to Alltel an invoice reflecting a fee charge of $4.50 per foot per year, for a total amount of $114,997.50, as provided by the Amended Ordinance for right-of-way usage. Alltel refused to pay the invoice, contending that the City cannot charge $4.50 per foot but rather is limited to $5,000 per mile ($0.947 per foot), the rate charged by the DOT on its rights-of-way.

## PROCEEDINGS IN FEDERAL COURT

On April 4, 2001, Alltel filed a two-count complaint against the City in the United States District Court for the Middle District of Georgia. Count I alleged that the Amended Ordinance violated the Federal Telecommunications Act, 47 USC § 253 (a), because it assessed an unfair and unreasonable fee and it effectively prohibited Alltel from providing interstate or intrastate telecommunications service. Count II asserted that the Amended Ordinance violated OCGA § 32-4-92, and related Code sections, because it charged more than the maximum permitted by the DOT under its Rule 672-11-.03. Alltel sought a declaratory judgment and the City filed a counterclaim for unpaid permit fees. The parties filed cross-motions for summary judgment.

On September 27, 2002, the district court granted Alltel's motion for summary judgment after concluding that the permit fee set forth in the Amended Ordinance is invalid as preempted by state law pursuant to OCGA §§ 32-4-92 (a) (10),[5] 32-6-174, and DOT Rule 672-11-

---

[4] [Rule] 672-11-.03. Long Distance and Trunk Communications Cables; Permit Fee Schedule

| Rate Class | Location | Annual Fee |
|---|---|---|
| L | 1. Along local roads in rural areas | $1,000/mile |
| | 2. Along State Highways in rural areas: | |
| R1 | a. Where ADT is less than 2,000 | $1,000/mile |
| R2 | b. Where ADT is 2,000 or more | $2,000/mile |
| U | 3. Along roads and streets inside urban areas | $5,000/mile |

Note:
1. These rates are for a single cable installed aerially on a pole line or underground by direct bury or in conduit. Where conduit is used, one additional conduit may be installed simultaneously for use by the owner for future repairs or replacement of minor cable segments.
2. Where lines of two or more owners are installed simultaneously and in the same trench the above rates shall be reduced by 25 percent for each owner.
3. Where cables are installed on a pole line in joint use with another utility facility the above rates shall be reduced by 25 percent.
4. Fees shall be calculated to the nearest .01 mile.
5. Urban areas are those cities and environs having a population of 5,000 or more with boundaries defined by the Department and shown on its official highway maps for each area.

[5] OCGA § 32-4-92 (a) (10) provides:

.03.[6] Consequently, the district court also granted Alltel's request for a declaratory judgment, declared that the Amended Ordinance violates Georgia law, and enjoined the City from enforcing it. The City appealed to the Eleventh Circuit, which certified the aforementioned question to this Court.

## DISCUSSION

OCGA § 32-4-92 (a) (10) confers upon a municipality the authority to

> grant permits and establish reasonable regulations for the installation, construction, maintenance, renewal, removal, and relocation of . . . cables, wires, . . . and other equipment, facilities, or appliances of any utility in, on, along, over, or under any part of its municipal street system and of a county road system lying within its municipal limits.

However, the statutory provision clearly limits these regulations in that they must "not be more restrictive with respect to utilities

---

(a) The powers of a municipality with respect to its municipal street system, unless otherwise expressly limited by law, shall include but not be limited to the following:

. . .

(10) A municipality may grant permits and establish reasonable regulations for the installation, construction, maintenance, renewal, removal, and relocation of pipes, mains, conduits, cables, wires, poles, towers, traffic and other signals, and other equipment, facilities, or appliances of any utility in, on, along, over, or under any part of its municipal street system and of a county road system lying within its municipal limits. However, such regulations shall not be more restrictive with respect to utilities affected thereby than are equivalent regulations promulgated by the department with respect to utilities on the state highway system under authority of Code Section 32-6-174. As a condition precedent to the granting of such permits, the municipality may require application in writing specifically describing the nature, extent, and location of the portion of the utility affected. The municipality may also require the applicant to furnish an indemnity bond or other acceptable security conditioned to pay for any damage to any part of a public road or to any member of the public caused by the work of the utility performed under authority of such permit. However, it shall be the duty of the municipality to ensure that the normal operation of the utility does not interfere with the use of any portion of the municipal street system or of a municipal extension of a county public road. The municipality may also order the removal and relocation of the utility, equipment, facilities, or appliances where such removal and relocation is made necessary by the construction and maintenance of any part of the municipal street system or municipal extension of a county public road. In so ordering the removal and relocation of a utility or in performing such work itself, the municipality shall conform to the procedure set forth for the department in Code Sections 32-6-171 and 32-6-173, except that when the removal and relocation have been performed by the municipality, it shall certify the expenses thereof for collection to its city attorney[.]

[6] The district court also determined that in light of its ruling, it need not address the issue of federal preemption and that the City's motion for summary judgment was moot.

affected thereby than are equivalent regulations[7] promulgated by the [DOT] with respect to utilities on the state highway system under authority of Code Section 32-6-174." OCGA § 32-4-92 (a) (10).

The City argues that the DOT did not intend to set the maximum fee that a municipality may charge for the installation and maintenance of the cables, and if it did, the regulation is an invalid delegation of legislative power. It further argues that the doctrines of statutory construction, noscitur a sociis[8] and expressio unius est exclusio alterius,[9] make it clear that OCGA § 32-4-92 (a) (10) deals only with technical issues, such as installation, construction, maintenance, etc., and therefore, the statute's limiting language does not apply to a municipality's right to charge a "revenue producing and licensing fee." Instead, the City urges, that its right to charge a fee arises under OCGA § 36-34-2 (7),[10] which gives the governing body of a municipal corporation the "power to grant franchises to or make contracts" with utilities. But the City's arguments are unavailing.

First, the DOT's intent is not relevant to the question of whether OCGA § 32-4-92 (a) (10) established a limitation on municipal power to set regulatory fees. Preemption is a matter of legislative intent, that is, it is dependent upon the legislature's intent in granting the power to regulate. *City of Buford v. Ga. Power Co.*, 276 Ga. 590, 591 (3) (581 SE2d 16) (2003). " 'Where the State has established an agency of its own with plenary power to regulate utilities, it is universally recognized that municipalities cannot properly interpose their local restrictions unless and only to the extent any power to do so is expressly reserved to them by statute.' " Id.

By its express terms, OCGA § 32-4-92 (a) (10) deals with a municipality's authority in regard to the granting of permits to utili-

---

[7] The parties do not dispute that the DOT rule setting forth the permit fees is an "equivalent regulation" to the Amended Ordinance within the meaning of OCGA § 32-4-92 (a) (10).

[8] "Words, like people, are judged by the company they keep." *Tuten v. City of Brunswick*, 262 Ga. 399, 401 (2), n. 1 (418 SE2d 367) (1992), quoting *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556 (307 SE2d 499) (1983).

[9] "[T]he express mention of one thing implies the exclusion of another." *Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995).

[10] OCGA § 36-34-2 (7) states:

In addition to the other powers which it may have, the governing body of any municipal corporation shall have the following powers, under this chapter, relating to the administration of municipal government:

. . .

(7) The power to grant franchises to or make contracts with railroads, street railways, or urban transportation companies, electric light or power companies, gas companies, steam-heat companies, telephone and telegraph companies, water companies, and other public utilities for the use and occupancy of the streets of the city, for the purpose of rendering utility services, upon such conditions and for such time as the governing authority of the municipal corporation may deem wise and subject to the Constitution and the general laws of this state.

ties for the installation of cables, wires, and other equipment. It is not ambiguous. Thus, the judicial construction of the statute, offered by the City, is not only unneccessary, but it is forbidden. *Jennings v. McIntosh County Bd. of Commrs.*, 276 Ga. 842, 845 (3) (583 SE2d 839) (2003); *Six Flags Over Ga. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003).

In the recent case, *BellSouth Telecommunications v. Cobb County*, 277 Ga. 314 (588 SE2d 704) (2003), this Court was asked to determine whether Cobb County had the authority, by ordinance, to impose a permit fee on telecommunications companies who apply to use Cobb County's public rights-of-way. The resolution of the issue involved consideration of OCGA § 32-4-42 (6), part of the statutory scheme providing for the powers of a county with respect to its county road system. That statute has language identical to that in OCGA § 32-4-92 (a) (10) and gives a county the express authority to "grant permits and establish reasonable regulations for the installation, construction, maintenance, renewal, removal, and relocation of . . . cables, wires, . . . and other equipment, facilities, or appliances of any utility in, on, along, over, or under the public roads of the county which are a part of the county road system lying outside the corporate limits of a municipality." OCGA § 32-4-42 (6) also contains the same restriction now at issue, in that it provides that "such regulations shall not be more restrictive with respect to utilities affected thereby than are equivalent regulations promulgated by the [DOT] with respect to utilities on the state highway system under authority of Code Section 32-6-174."

This Court stated, that "[i]t is well settled that a local government's authority to charge fees reasonably related to regulation is implied under its police power," and conversely, that "the power to impose a tax for revenue-producing purposes must be conferred by statute." *BellSouth Telecommunications v. Cobb County*, supra at 314-315 (1). This Court then held that OCGA § 32-4-42 gave the county the "express statutory authority to regulate a telecommunications company's installation of lines on the county's rights-of-way," and therefore, that the county had the authority to charge a permit fee if it was an administrative cost recoupment fee, reasonably related to the regulation. *BellSouth Telecommunications v. Cobb County*, supra at 315 (1). However, this Court affirmed that the county's regulations could not be "more restrictive than the Georgia Department of Transportation's regulations under OCGA § 32-6-174." *BellSouth Telecommunications v. Cobb County*, supra at 314, n. 1. Also, this Court had previously determined that the restriction in OCGA § 32-4-42 (6) did apply to the governing authority's requirement of permits and the imposition of other demands on utilities, thus, the restriction was not limited to "technical matters." *Twiggs*

*County v. Atlanta Gas Light Co.*, 262 Ga. 276, 278 (417 SE2d 13) (1992).

The City seeks to free itself from the identical restriction in OCGA § 32-4-92 (a) (10) by now characterizing the charged fee as a franchise fee or a revenue-producing tax, presumably authorized by OCGA § 36-34-2. But, the attempted transformation is unsuccessful. First, the Amended Ordinance itself provides that the authorized charges are "permit fees." See footnote 2, supra. Moreover, in the federal proceedings, the City characterized the fee authorized under its Amended Ordinance as a "permit," and entered into joint stipulations to that effect. The City agreed with Alltel that the purpose of the Amended Ordinance was to govern the fees it charged in its "franchising and licensing of telecommunications providers," in the management of the use of its public rights-of-way. Thus, the fee is for licensing, and therefore, it is a permit. *BellSouth Telecommunications v. Cobb County*, supra; *DeKalb County v. Atlanta Gas Light Co.*, 228 Ga. 512 (186 SE2d 732) (1972). The fact that the term "franchising" is mentioned in conjunction with "licensing" does not convert the charged fee into one for a franchise.

A franchise is a contract creating property rights, and a city cannot create such a contractual relationship by its unilateral act. *City of Calhoun v. North Ga. Elec. Membership Corp.*, 209 Ga. App. 547 (1) (433 SE2d 698) (1993); *City of LaGrange v. Troup County Elec. Membership Corp.*, 200 Ga. App. 418, 419-420 (408 SE2d 708) (1991); see also *Ga. Power Co. v. City of Rome*, 172 Ga. 14, 23 (3) (157 SE 283) (1931). The City cites the last line of OCGA § 32-6-174, which states, "[i]n addition to the requirements of such [DOT] regulations, it shall be the responsibility of the utility to obtain whatever franchise is required by law." However, there is no evidence that Alltel sought a franchise or that the City's Amended Ordinance authorized fees for the grant or creation of a franchise or other property right.

Finally, the City's contentions that the fee is a municipal tax or alternatively, that the City intended its ordinance to encompass both police power and revenue producing power fails. "The distinction between a tax and a license is not one of names but of substance. A tax is primarily intended to produce revenue, while a license is primarily intended for regulation under the police power." *BellSouth Telecommunications v. Cobb County*, supra at 315 (1), quoting *Richmond County Business Assn. v. Richmond County*, 224 Ga. 854, 856 (165 SE2d 293) (1968). The stipulations of the parties demonstrate that the fee is a condition precedent for engaging in business, therefore, it is a license fee. *Camden Tel. &c. Co. v. City of St. Marys*, 247 Ga. 687, 689 (2) (279 SE2d 200) (1981).

For the foregoing reasons, it must be concluded that the Amended Ordinance is preempted by OCGA §§ 32-4-92 (a) (10), 32-6-

174, and Georgia Department of Transportation Rule 672-11-.03. *Question answered. All the Justices concur.*

DECIDED MAY 3, 2004.

■■■■

*James, Bates, Pope & Spivey, Thomas C. James III*, for appellant.
*Womble, Carlyle, Sandridge & Rice, Nisbet S. Kendrick III, Adam S. Scott*, for appellee.
*Robert J. Middleton, Jr., Susan M. Pruett, Ted C. Baggett*, amici curiae.