TOBEY *et al. v.* SEABOARD AND SOUTHERN CONSTRUCTION COMPANY INC. *et al.*

No. 6892.   September 20, 1929.

*A. R. Rucks, Bryan, Colgin, Suhr & Bering,* and *Bryan & Middle-brooks,* for plaintiffs in error.

*Little, Powell, Smith & Goldstein* and *Randolph, Parker & Fort-son,* contra.

Russell, C. J.   The controversy as begun in the pleadings was boiled down to one issue upon the trial in the lower court.   The question is whether the Seaboard & Southern Construction Company or the Brazos River Harbor Navigation District is the owner of a certified check for $7500, admitted to be in the possession of the Federal Reserve Bank of Atlanta.   So far as appears, Mr. Tobey has no personal pecuniary interest in the matter, and the bank is but a stakeholder, suit as to it being in the nature of an equitable garnishment.   The question depends upon the right of the construction company to withdraw its bid as and when it did withdraw the same.   The case was tried by consent before the trial judge without the intervention of a jury.   The following facts appeared without dispute:   The navigation district is a political subdivision

of the State of Texas, created, among other purposes, for that of improving streams. The statutes relevant to the pending issues were submitted to the court, and are in the record. The navigation district is governed by a board of three commissioners. Section 37 of article 8263 R. C. S. (1925) provides that "If the improvement or improvements be not carried out and performed by the government of the United States as herein provided, the contract or contracts for such improvement or improvements shall be let by the Navigation and Canal Commissioners, and the same shall be awarded to the lowest and best responsible bidder after giving notice by advertising the same in one or more newspapers," etc. In section 38 it is provided that "any and all bids may be rejected at the discretion of the navigation and canal commissioners." It will be noted that the powers and duties mentioned in these two sections of the statute are conferred to "the navigation and canal commissioners." The commissioners were in session on February 15, 1928, at the time the construction company submitted the bid which was the origin of this litigation. The minutes of the commission show that the construction company's bid was the low bid, and that the following resolution was duly and unanimously carried, and it was decided, that, "subject to its being ascertained that Seaboard & Southern Construction Company Inc. was financially responsible, and permission of the War Department to do so being granted, the bid of Seaboard & Southern Construction Company Inc., of Jacksonville, Florida, aggregating a total of $131,772.90, be accepted, and the contract for entire bridge be awarded said company; and E. C. Tobey, chairman, was authorized and instructed to investigate the financial responsibility of said Seaboard & Southern Construction Company Inc., and to secure permission of the War Department, and, upon securing said financial report on said company and the permission of the War Department, to advise said company of the award of the contract to said company and arrange for entering into contract with said company." On the same day Tobey, designating himself as chairman of the navigation and canal commission, wired the construction company as follows: "Your bid Brazos River Channel bridge low. We are forwarding you questionnaire by mail, and will thank you to forward us by mail on receipt of this message your financial statement." On February 16 the construction company wrote Tobey, chairman, ac-

knowledging receipt of the telegram and enclosing a copy of its financial statement.

On February 16 Tobey, wrote to the construction company: "We wired you last night, advising you were low bidder on the Brazos River Diversion Channel bridge; also requesting you to forward us your financial statement. . . We are very glad to advise you that we have secured a statement from the Bradstreet Company on your firm, and are very pleased to state that it is entirely satisfactory to us. We will be in a position to award you this work as soon as the War Department gives us this permission." On February 18 the construction company acknowledged receipt of Tobey's letter of February 16, and proceeded to say: "Since you made it clear in your notice to bidders that the contract would not be awarded on the date of the opening of bids, we did not send a representative over for the opening. As soon as you are in a position to close this contract, will you kindly wire us collect?" On February 28 the president of the construction company wired to Tobey, chairman: "Will you kindly advise me, Washington Hotel, Shreveport, by return wire if you have received War Department authorization on Brazos bridge." In reply the secretary of Tobey wired the president of the company: "To date authorization not received from War Department. Mr. Tobey is in Washington, D. C., Washington Hotel, relative to this matter." On March 8 Tobey wired the construction company: "Will be in Freeport Monday. Can now award you contract," and in reply the president of the company wrote Mr. Tobey, chairman, "I have your telegram, and I expect I will be in the vicinity of Freeport, Texas, on or about March 15." There was no further correspondence between the parties until March 13, at which time the following wire was sent from the construction company to Tobey, as chairman of the navigation and canal commisson: "We hereby withdraw our bid on bridge over Brazos River Diversion Channel tendered February 15." On March 15 a meeting of the commissioners was held, at which two of the commissioners, George E. Badge and E. C. Tobey, were present; and by proper resolution "it was decided, that, without in any manner waiving the navigation district's contention that the bid of said Seaboard & Southern Construction Company had been accepted and the contract for the construction of said bridge had been awarded to said company, formal written notice be given to

said company that its said bid was accepted and contract for the construction of said bridge awarded to it, and that the navigation district was ready to enter into contract with said company." The resolution contained a copy of the notice to be given; and in pursuance of the authority and instruction of the foregoing resolution, the letter was written by Tobey, chairman, as follows: "We are pleased to hereby notify you that your bid and proposal to provide at your expense all materials, labor, etc., and to construct complete the bridge over the Brazos River Diversion Channel near Freeport, Texas, for the Brazos River Harbor District, for the sum of $131,-772.90, according to the plans and specifications furnished you, and in accordance with your bid and proposal made to us at Freeport, Texas, February 15, 1928, is hereby accepted, and the contract for the construction of said bridge is hereby awarded to you. You are advised that we stand ready to enter into contract with you for the construction of said bridge, and respectfully request that you meet with us and enter into said contract and bond as specified in your proposal. You are advised, however, that it is our contention that we awarded this contract to you on March 8, 1928, by wire from New York; and in making this formal award herewith we do not intend to waive such contention." By a motion unanimously carried the commissioners declared the check forfeited on March 24, 1928.

It is the contention of the plaintiffs in error that the bid of the construction company was accepted by the navigation and canal commissioners prior to March 13, 1928, and that the notice of withdrawal given by the construction company was therefore ineffectual and the certified check was properly forfeited. The plaintiffs in error contend (a) That there was a meeting of minds and a valid offer and acceptance prior to March 13, 1928, the time the notice of withdrawal was given. (b) That the action of the navigation and canal commissioners in accepting the bid was authorized at the meeting of the commissioners on February 15, 1928, and that the acceptance of the bid was duly authorized at said meeting. The judgment of the trial court was adverse to these contentions; and we are of the opinion that the court correctly held that the construction company had the right to withdraw its bid, in view of the circumstances disclosed by the record. When did the navigation and canal commissioners accept the bid of the construction com-

pany? Certainly not at the meeting of the board held on February 15, 1928, because, as indicated in the motion made at that time, the bid, under the laws of Texas, could not be accepted until the financial responsibility of the bidder was ascertained and until the approval of the War Department had been obtained. There was therefore no acceptance on February 15. The correspondence of February 15 and 16 between the parties shows that both understood that there could be no acceptance until these prerequisites were complied with. The telegrams of February 28 with reference to the War Department show that there could have been no legally authorized acceptance up to that time. Can Mr. Tobey's telegram from New York of March 8, stating, "Will be in Freeport Monday. Can now award you contract," be construed as an acceptance of the company's bid? We concur in the opinion of the learned trial judge that it can not be so construed. The bid of the construction company was an offer to contract, not binding upon it until legally accepted. *Atlanta Buggy Co.* v. *Hess Spring & Axle Co.,* 124 *Ga.* 338 (52 S. E. 613, 4 L. R. A. (N. S.) 431) ; *Cooley* v. *Moss,* 123 *Ga.* 707 (3) (51 S. E. 625). As said by Mr. Williston (1 Williston on Contracts, 94, § 65) : "Therefore, even though a definite time in which acceptance may be given is named in such an offer, the offerer may nevertheless revoke his offer within that period; and even though the offer expressly states that it shall not be withdrawn, nevertheless it may be." The law of Texas, which in the present case is the State whose law governs the contract, specifically recognizes this general rule as to withdrawals. Houghtling *v.* Eubanks, 186 S. W. 364; Whitaker *v.* Zeihme, 61 S. W. 499. The Texas statute expressly provides that any and all bids may be rejected. Instead of requiring the contract to be let to the lowest bidder, the statute forbids letting to the lowest bidder until and unless the commission in exercising a discretion vested in them by law have approved his financial stability. It is our opinion that the offer made by the construction company was not accepted before its withdrawal, and that as the proposal was unilateral it could not develop into a contract until the party to whom the proposal was made had done something to make it binding upon himself. The acceptance of an offer must be unequivocal. 1 Williston on Contracts, § 72, and cit. A purported acceptance which is qualified or conditional may be tantamount to a rejection of the offer. In order to make a

contract the offer must be accepted unequivocally and unconditionally. *Phinizy* v. *Bush,* 129 *Ga.* 479 (4) (59 S. E. 259). It has already appeared from the nature of the circumstances that there was no acceptance of the bid on February 15; but counsel argue, and the resolution of the commissioners contends, that there was an acceptance on March 8. We can not concur in this view, for two reasons. In the first place the language of the telegram "can now award you contract" merely informs the construction company that Tobey is in a position to give an acceptance. It does not say that he accepts. In the second place the statute of Texas requires the approval of the financial standing of a bidder by the commission, before a bid is accepted. The language of the statute is that the contract "shall be let by the navigation and canal commissioners, and shall be awarded to the lowest and best responsible bidder." "The navigation and canal commissioners" are to let the contract, and they are to award it to the lowest and best responsible bidder as determined by the board. The minutes of the meeting of February 15 did not have the effect of delegating to Tobey the determination of a matter which under the law the commission could alone determine. The resolution adopted conveyed to him no other duty than that of investigating the matter. Neither the right of exercising his sole discretion in determining the financial responsibility of the construction company nor the right to accept the bid of the construction company by the telegram of March 8 appertained to Mr. Tobey. Both involved the exercise of such discretion by the board of navigation and canal commissioners as can not by law be delegated. "It is well settled that where discretion is vested in an officer or governing body or commission the exercise of such discretion can not be delegated to another." Larrabee *v.* Bell, 56 App. D. C. 121 (10 Fed. (2d) 986), citing McQuillin Mun. Cor. § 387; Baltimore *v.* Wollman, 123 Md. 310 (91 Atl. 339); Harcourt *v.* Asbury Park, 62 N. J. Law, 158 (40 Atl. 690). In this State substantially the same question has been ruled in *Williams* v. *Batton,* 156 *Ga.* 620 (119 S. E. 709), and *Johnston* v. *Macon,* 62 *Ga.* 645, in which the court said: "The mayor and council, having the power delegated to them by the General Assembly to tax, can not delegate it to the mayor alone, and so much of the ordinances as so delegates this power is void." See also 19 R. C. L. 798, § 105; 43 C. J. 239, 240. Section 5204 of article 10

of the Revised Statutes of Texas enacts the rules which shall govern in the construction of all civil statutory enactments, and in sub-paragraph 5 of the section it is provided that a joint authority given to any number of persons or officers may be executed by a majority of them unless it is otherwise declared. So we conclude that there was no acceptance of the bid by the commission as an organized body, or by a majority of the commission in a regular session thereof, prior to the withdrawal of the offer by the construction company.

Having held that the bid was a mere offer to contract, it would not be rendered mutual by any act on the part of the navigation commission to which it was proposed and to which therefore the latter was not obligated, and the construction company had the right to withdraw. The plaintiffs in error contend that although the court should hold that the offer was not formally accepted prior to the attempt to withdraw, the navigation commission nevertheless had the right to forfeit the check, for the two following reasons: That "the Seaboard & Southern Construction Company is now estopped to deny that a valid offer and acceptance had been made, and is further estopped to deny the authority of E. C. Toby, as chairman of the navigation and canal commissioners, to enter into and bind the navigation and canal commissioners by a contract properly executed, since the Seaboard & Southern Construction Company has by its actions, conduct, and correspondence led the plaintiff in error to believe that a valid contract had been formed, and that the Seaboard & Southern Construction Company considered its bid duly accepted, and has caused the plaintiff in error, who relied upon the above, to spend a large sum of money to obtain the approval and permission of the Chief of Engineers at Washington in order to award the formal written contract for constructing the Brazos River Diversion Channel bridge to the Seaboard & Southern Construction Company, the lowest bidder;" and further, that "even though the bid of the Seaboard & Southern Construction Company was not accepted prior to the notice of withdrawal on March 13, 1928, and even though no contract was made prior to March 13, 1928, nevertheless a valid and binding obligation and contract was formed by the formal accept-ance sent by the navigation and canal commissioners on March 15, 1928, pursuant to resolution duly passed at a meeting of the

navigation and canal commissioners. Plaintiffs in error insist that under the statute of Texas, which requires that each bid be accompanied by certified check in an amount not less than 5% of the total bid, to be forfeited as liquidated damages in case the bidder refuses to enter into a proper contract, and under the terms of the notice to contractors published in this case, which required a certified check to be deposited accompanying the bid before the bid would be considered, the bid of the Seaboard & Southern Construction Company was irrevocable, and could not be withdrawn until the plaintiffs in error had had a reasonable time within which to pass thereon. Plaintiffs in error maintain that the action of the navigation and canal commissioners on March 15, 1928, in formally accepting the bid and in reaffirming their former acceptance of the bid was done in a reasonable time and constituted a valid acceptance of the bid and offer of the Seaboard & Southern Construction Company on March 15, 1928; the notice of withdrawal of the bid given by the Seaboard & Southern Construction Company being ineffective to withdraw the offer." In view of the ruling made upon the first contention of the plaintiffs in error, it would seem unnecessary to discuss these contentions further than by the rulings embodied in the second and third headnotes. *Judgment affirmed. All the Justices concur.*