FEDERAL FARM MORTGAGE CORPORATION *v.* DIXON
*et al.*

No. 12020. JANUARY 13, 1938.. REHEARING DENIED FEBRUARY 18, 1938.

*G. Stokes Walton* and *Victor Davidson,* for plaintiff.

*R. Earl Camp* and *Lester F. Watson,* for defendants.

JENKINS, Justice. Federal Farm Mortgage Corporation sued in ejectment the grantor under a deed to secure debt, and a third person in possession of land, basing its claim of title on the security deed and a deed executed to it by virtue of a power of sale in the security deed. The third person pleaded that he had made a contract to purchase the property from the plaintiff, through its salesman and agent, for $2,250, $450 in cash, and the balance $90 a year for 20 years, the terms of this contract to be later effected by a warranty deed from the plaintiff and a deed to secure debt from the defendant; that on making the cash payment this defendant took possession, "breaking the lands, sowing oats, . . purchased material for the repair and improvement of the buildings, . . and is now growing and cultivating crops on said premises upon the faith of said sale," all "at an expense of approximately $500 besides the cash payment on the purchase-money." The judge, by agreement trying the case without a jury, found for the defendant and decreed specific performance. The undisputed evidence showed that legal title was in the plaintiff; that on November 2, 1936, the defendant submitted to the plaintiff a signed written offer to purchase the land on the terms alleged in the plea; and that a bank check to cover the $450 cash deposit was delivered to the plaintiff, and was paid on November 7, 1936. No fraud in the procurement or execution of the written offer was shown. It contained these provisions: "In the event a contract of purchase and sale of the premises is not consummated between offerer and the bank, the cash portion of the purchase-price paid to or deposited with the bank shall be returned to offerer. Collection by the bank of any check, draft, or other form of remittance deposited with the bank shall not be construed as an acceptance of this offer to purchase. . . The acceptance by the bank of this offer to purchase . . must be in writing; and to be binding on the bank or the corporation, the title to the premises must be approved by the bank's legal department. The bank's acceptance of this offer to purchase, . . to be valid, must be approved by the executive committee of the bank, or by one member of the executive com-

mittee of the bank and such other person as may be designated and empowered by resolution of the board of directors or of the executive committee of the bank." The writing bore the entry: "Approved by Executive Committee—Nov. 9, 1936—A. R. Murray," which was crossed out with pencil mark; also the entry: "Reconsidered and rejected—Miss A. R. Murray, Minute Clerk—Date Nov. 17, 1936." There was nothing to show that before the entry rejecting the offer the alleged purchaser was informed that the executive committee had made the entry of approval on the written offer or had approved it; and there was never any communication from the alleged vendor to the alleged purchaser that the offer had been accepted. In the first communication on November 24, 1936, after the offer, the alleged vendor wrote to the offerer that his offer had been "rejected [by the executive officers] for the reason that another offer to purchase had been accepted." In reply, on November 27 and 30, the offerer wrote to the alleged vendor, stating the contentions made in the verified plea; that he had made an agreement with two agents of the alleged vendor to purchase the land, had made the $450 cash payment; that they told him "I had purchased it, . . that I could consider the trade closed;" and that he went into possession as alleged. It was not made to appear that the alleged agents acted or assumed to act under or by virtue of any action by the executive committee in approving the offer before their rejection and communication of such rejection to the offerer. On the contrary, the contention of the offerer was that the statements of the alleged agents occurred independently of and before any action by the executive committee. Nor was it made to appear that the plaintiff, at any time before its rejection of the offer and notice to the defendant of the rejection, was informed that the alleged agents had made to the defendant the alleged statements. After the plaintiff's written rejection of the offer, it tendered and continued to tender the amount of the cash deposit back to the defendant offerer; but the tender was refused.

1. "The consent of the parties being essential to a contract, unless each has assented to all the terms the contract is incomplete; until assented to, each party may withdraw his bid or proposition." Code, § 20-108. While "an offer may contemplate acceptance by the doing of an act; and if the act be performed while the offer is

in life, a binding contract is created, . . 'on the ground that the thing done is a sufficient and completed consideration'" (*Anderson* v. *Mangham,* 32 *Ga. App.* 152, 123 S. E. 159; *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810, 812, 28 S. E. 998; *Sivell* v. *Hogan,* 119 *Ga.* 167 (3), 46 S. E. 67; *Hollingsworth* v. *Peoples Bank,* 179 *Ga.* 704, 710, 177 S. E. 743, and cit.; *Atlanta & West Point R. Co.* v. *Camp,* 130 *Ga.* 1, 60 S. E. 177, 15 L. R. A. (N. S.), 594, 124 Am. St. R. 151, 14 Ann. Cas. 439; *Sheffield* v. *Whitfield,* 6 *Ga. App.* 762, 765, 65 S. E. 807; *Case Threshing Machine Co.* v. *Donalson,* 10 *Ga. App.* 428, 430, 73 S. E. 618, and cit.), yet where an express acceptance by the opposite party is required by the offer in order to establish a contract, the fact of such subsequent acceptance must be communicated to the offerer by the opposite party or competent agent of such party; and a mere private uncommunicated assent would not effect an agreement. *Tobey* v. *Seaboard &c. Construction Co.,* 169 *Ga.* 104, 109 (149 S. E. 914); *Adams* v. *Bridges,* 141 *Ga.* 418 (81 S. E. 203); *Atlanta Buggy Co.* v. *Hess Spring & Axle Co.,* 124 *Ga.* 338, 340 (52 S. E. 613, 4 L. R. A. (N. S.) 431); *Cauthorn Motor Co.* v. *Wheeler,* 49 *Ga. App.* 582, 586 (176 S. E. 683); *State Highway Dept.* v. *MacDougald Construction Co.,* 54 *Ga. App.* 310 (2) (187 S. E. 734); 6 R. C. L. 606, 607, §§ 29, 30.

2. The defendant as the alleged purchaser having required by the terms of his written offer that in order to effect a contract of purchase and sale his offer should be accepted in writing by certain named officials of the plaintiff corporation, no binding contract was consummated by mere oral statements to the offerer by other alleged agents of the vendor corporation that the contract had been accepted and was in force, where the alleged agents did not assume to speak by virtue of any action having been taken on the part of the officials, but on the contrary made their alleged declarations before any sort of action was taken by such officials. Since it was not made to appear that the corporation was ever made aware of such statements having been made before its written rejection was communicated to the offerer, no principle of ratification or estoppel could be given effect.

3. Where the terms of the offer itself provided that "collection . . of any check . . or other form of remittance deposited with the bank shall not be construed as an acceptance of this offer

**470**

to purchase," the mere cashing by the alleged vendor of a check accompanying the offer would not amount to an implied acceptance of the offer, or work an estoppel against the alleged vendor, where it appears that promptly with the rejection of the offer, and continuously since, the proceeds of the check were tendered back to the offerer. No reason appears why the offerer should not be bound by the quoted provision contained in his offer, by which he sought to show that the offer submitted was bona fide and by a responsible party.

4. Under the preceding rulings, the judge erred in finding for the alleged purchaser and decreeing specific performance of the alleged contract of purchase.

*Judgment reversed. All the Justices concur.*