28551. NATIONAL FIRE INSURANCE CO. *v.* FARRIS.

DECIDED NOVEMBER 1, 1940.

*Dykes, Bowers & Dykes, MacDougald, Troutman & Arkwright, Dudley Cook,* for plaintiff in error.

*Fort, Fort & Fort,* contra.

SUTTON, J.  Mitchell Farris brought suit against National Fire Insurance Company on an alleged agreement by the insurer, through its agents, to pay the sum of $1081.60 to the plaintiff whose property, which was destroyed by fire, was insured under a policy issued by the company.  The suit was not brought on the policy, but on the agreement which it is alleged was entered into between the plaintiff and the company acting through an insurance adjuster and its local agent.  On the second trial of the case the jury returned a verdict in favor of the plaintiff.  The exception is to a judgment overruling the defendant's motion for new trial.  The evidence in regard to the alleged agreement was substantially as follows:  Farris, after operating for several months in Americus, Georgia, a restaurant and dance hall, known as the "Red Pig and Club Arbor," sustained, on October 25, 1937, a loss by fire.  On November 3, 1937, an adjuster was sent by the defendant to investigate the loss.  After an inspection of the premises he informed the insured that he was unwilling to proceed further unless the insured would execute a "non-waiver" agreement; whereupon they repaired to the office of the company's local agent, Herbert Hawkins, and the insured executed an instrument reading as follows: "It is hereby mutually stipulated and agreed by and between Mitchell Farris, operating as 'Red Pig and Club Arbor,' party of the first part, and the insurance companies whose names are signed hereto, party of the second part, that any action taken, request

made, or any information now or hereafter received by said party of the second part in or while investigating the amount of loss or damage or other matter relative to the claim of the said party of the first part for property alleged to have been lost or damaged by fire on the 25th day of October, 1937, shall not in any respect or particular change, waive, invalidate, or forfeit any of the terms, conditions, or requirements of the policies of insurance of the party of the second part held by the party of the first part or any of the rights whatsoever of any party hereto. The intent of this agreement is to save and preserve all the rights of all the parties and permit an investigation of the claim and the determination of the amount of the loss or damage, in order that the party of the first part may not be unnecessarily delayed in his business, and that the amount of his claim may be ascertained and determined without regard to the liability of the party of the second part and without prejudice to any rights or defenses which said party of the second part may have." This agreement was signed by Farris and by the defendant, acting through its adjuster. The adjuster then returned to the location of the risk, and checked an inventory which had been prepared by the plaintiff, and determined that the loss sustained amounted to $1301.40. He then went to the Atlanta office of the defendant, and, after making an investigation as to the ownership and prices of certain items included in the inventory prepared by the insured, concluded that a number of discrepancies existed, and upon taking the matter up with the plaintiff on another trip to Americus it was agreed between the insured, the local agent, and the adjuster that the original amount fixed as the loss should be reduced to $1081.60. At that time it was further agreed between them that this agreement would be submitted to the company for its consideration of the claim in a formal proof of loss. This written proof of loss was prepared for the plaintiff's signature, and upon its completion and execution by him was turned over to the adjuster to be delivered to the company's general agent in Atlanta.

The evidence conclusively shows that it was understood by all three persons at Americus that the agreement as to the amount of $1081.60 was not an agreement on behalf of the company absolutely to pay the plaintiff that sum or any sum, but was merely an agreement that, if the company later admitted liability and its obligation to pay some amount because of the loss sustained under

the policy, the amount to be paid was $1081.60. In other words, the *amount* of the loss was to be taken as admitted by the company, but the question of *liability* was left open for determination. The local agent testified that in the transaction he was at all times acting as the agent of the company and not of the insured, and that he had no authority to bind the company and could only recommend a settlement for any client. Bachman, the adjuster, testified that neither he nor any other adjuster had authority to bind the company as to liability. After the preparation of the proof of loss there was attached thereto a typewritten statement, "Loss settled and compromised, assured proposing to accept and company agreeing to pay under within described policy the total of $1081.60." Hawkins, the local agent, testified: "I think the State agent and I talked over the telephone once during the negotiations. Hugh Powell of Atlanta was the State agent for the company. The powers and authority of a State agent is very liberal. It is more liberal than a State agent; he was a general agent. I am not quite sure that I advised him of the amount agreed upon over the long-distance telephone. All I remember is that he had the first amount in mind, I think $1300 and something that had been agreed upon; but of course, when Bachman told him about this other having been paid from the marine policy, of course he accepted that, and he told me at one time, I can't be positive what time we talked over the 'phone, once or twice, that the check had been written and was in the mail." Bachman left Americus with the proof of loss. There was further testimony with respect to a certain release executed by Farris in Atlanta on the following Monday, November 29, 1937, in consideration of the payment to him of $150 in settlement of his claim, but the circumstances and facts of the transaction, and about which the evidence was greatly in conflict, need not be detailed here, inasmuch as, in our opinion, the case turns upon the question whether the agreement entered into in Americus on November 27, 1937, was binding upon the company to the extent of establishing liability on its part to pay the insured the sum of $1081.60, and whether, if no such liability arose by reason of the agreement, the company became liable, as contended by the defendant in error, by an alleged ratification, through its general agent at Atlanta, in the telephone conversation hereinbefore mentioned, of the agreement which was entered into at Americus between the insured, the local agent, and the adjuster Bachman.

It is clear from the facts shown by the record that the only agreement entered into on November 27, 1937, between the insured, the local agent, and the adjuster was with respect to the *amount* of loss sustained, and that it did not purport to estop the defendant from asserting non-liability. There was no absolute agreement *to pay* any sum. Even if it be contended that ordinarily an adjuster has authority to agree to a settlement and to bind the company he represents, it is here shown that before entering into any investigation of the loss and negotiation with the insured the adjuster caused a non-waiver agreement to be executed, in which it was specifically recited that "The intent of this agreement is to save and preserve all the rights of the parties, . . and that the amount of his [the insured's] claim may be ascertained and determined *without regard to the liability of the party of the second part* [the insurer], and without prejudice to any rights or defenses which said party of the second part may have." (Italics ours.) This agreement expressly negatives any idea that the company would be bound by anything done or said by its adjuster in his negotiations with the insured in respect to the loss sustained. The legality of this agreement preserving the rights of the defendant has been upheld in *Firemen's Insurance Co.* v. *Blount,* 182 *Ga.* 459 (185 S. E. 717), in which the non-waiver agreement was in the same language as in the agreement here involved, except as to dates, etc. Obviously nothing done by the local agent in assisting the insured in the preparation of his claim could be regarded as attaching liability to the defendant under the policy as to payment of any sum. The preparation and presentation of a proof of loss was solely the act of the insured, and, under the provisions of the policy which was in evidence, was a prerequisite to recovery of any amount. The insurance company had the right to exact such a proof. Code, § 56-831. The proof of loss issuing from the insured and not signed by or participated in by the company as a party thereto, the incorporation thereof of the language, "Loss settled and compromised, assured proposing to accept and company agreeing to pay under within described policy the total of $1081.60," must be taken as being only a declaration of the insured and not of another, even though it is inferential from the evidence that Bachman prepared the typewritten statement attached to the proof of loss. The testimony of the agent Hawkins and of the adjuster

Bachman, and even of the insured himself, is susceptible of no other construction than that it was thoroughly understood by all of them that there was no intention to commit the company to liability, and that the agreement related solely to the *amount* of the loss, which amount was to be paid only in the event of a determination of liability. Under the evidence a finding was demanded as a matter of law that the defendant had not, through its agents, entered into any agreement to pay the insured the sum of $1081.60 or any amount whatever.

Nor was the evidence sufficient to show that by ratification, as contended by the defendant in error, the company had agreed to pay the established amount of loss. Ratification here necessarily presupposes an agreement between others as to the specific thing to which the alleged ratification could relate. Manifestly, as there was no agreement on the part of the local agent or the adjuster to pay the insured any amount, nothing said or done by Powell, the general agent at Atlanta, in a long-distance telephone conversation with the local agent could amount to a ratification in respect to an alleged agreement to pay. The only ratification that could arise by reason of anything said or done by Powell would be one with respect to an agreement that, *if any liability existed,* the amount to be paid was to be taken as $1081.60. This is far different from an agreement to pay in all events, and on which the suit was predicated. It is not shown that Farris made to Powell, as general agent, any proposition to settle for that sum, and what Powell said to Hawkins was not a response to Farris or any one representing Farris. Nowhere is it made to appear that between Farris and Powell there had been an offer and acceptance; and whatever Powell told the local agent or did with reference to preparing or mailing a check to the agent amounted only to a transaction within the company, and not with Farris. Not being communicated to or accepted by Farris, the act of Powell could be undone by him at will. "'The consent of the parties being essential to a contract, unless each has assented to all the terms the contract is incomplete; until assented to, each party may withdraw his bid or proposition.' Code, § 20-108. While 'an offer may contemplate acceptance by the doing of an act; and if the act be performed while the offer is in life, a binding contract is created, . . "'on the ground that the thing done is a sufficient and completed consideration'" [citing],

yet where an express acceptance by the opposite party is required by the offer in order to establish a contract, the fact of such subsequent acceptance must be communicated to the offerer by the opposite party. or competent agent of such party; and a mere private uncommunicated assent would not effect an agreement [citing]." *Federal Farm Mortgage Corporation* v. *Dixon*, 185 *Ga.* 466, 468 (195 S. E. 414). Consequently, under the facts of the case, it could not be said that any agreement to pay the sum of $1081.60 arose by any offer and acceptance between the parties; and even if Powell had sent a check to the local agent, it could have been withdrawn by the general agent before delivery to Farris, or, as testified by the local agent Hawkins, he could have withheld it from Farris because he represented only the insurance company. Powell evidently intended to send a check, but changed his mind when Farris went to Atlanta on Monday, following the preliminary agreement in Americus on Saturday, and entered into a release, a discussion of which is not necessary to the decision of the issues here raised. It is sufficient to say that the evidence did not show, as to the insurance company, any binding agreement to pay the insured any amount whatever, and that no ratification of any agreement to pay is shown. The court erred in overruling the defendant's motion for new trial on the general grounds. Because of this ruling, no determination of the merits of the special grounds is deemed necessary.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*