34551.   TRI-STATE ELECTRIC COOPERATIVE *v.* CITY OF BLUE RIDGE.

718

DECIDED SEPTEMBER 18, 1953.

*William Butt, Herman J. Spence,* for plaintiff in error.
*T. H. Crawford, A. J. Henderson,* contra.

WORRILL, J.   This was an action by Tri-State Electric Cooperative against the City of Blue Ridge to recover $481.17 with interest for electric service furnished the defendant from April, 1952, to the date of the suit.   By cross-action the defendant counterclaimed against the plaintiff for a sum equal to 1% of the gross income of the plaintiff derived from the sales of electric service or energy within the corporate limits of the defendant municipality.   Upon the trial the case was submitted to the judge of the superior court on an agreed statement of facts for a decision by him of all issues of law and fact, and after consideration thereof the judge entered a judgment in favor of the defendant for $616.78, the same being the excess of the claim of the defendant over that of the plaintiff.

The "Stipulation of Facts" entered into between the parties to this action was as follows: "It is agreed between the parties in this case that for the purpose of this action and the determination of the rights of the parties herein, the facts of this case are as follows:

"(1) That the plaintiff, Tri-State Electric Cooperative, is a non profit membership corporation, distributing and selling electric energy to the public in the State of Georgia, and same has been domesticated under the laws of the State of Georgia, and has legal authority to carry on said business in said State as a domesticated corporation.

"(2) The defendant, City of Blue Ridge, is a municipal corporation located in Fannin County, Georgia.

"(3) On the 26th day of October, 1948, or just prior thereto, the plaintiff made application to the City of Blue Ridge for a franchise for the purpose of carrying on its business within the City of Blue Ridge, and on October 26th, 1948, a franchise was granted to the plaintiff by the defendant upon the conditions provided in an ordinance passed by the Mayor and Council of the City of Blue Ridge, a copy of the same being attached as Exhibit A to the answer herein, and is hereby made a part of this stipulation. Said franchise was accepted by the plaintiff cooperative, and since that time it has been carrying on its business in the City of Blue Ridge by virtue of said franchise.

"(4) That the City of Blue Ridge is a customer of the plaintiff cooperative by reason of its using the services of said cooperative in selling and furnishing electric current to the City of Blue Ridge, and the city pays for said services according to rates which are charged by the plaintiff.

"(5) There is no controversy between the parties as to the amount of the account sued on in this case. Until the 1st day of January, 1951, plaintiff cooperative had been paying to the defendant the sum of one percent (1%) of the annual gross income received by the plaintiff from the sale of electric energy within the corporate limits of the City of Blue Ridge as provided in item 5 of the aforesaid franchise ordinance, said sums having been paid at the end of each year upon the basis of a statement furnished by said plaintiff cooperative to the City of Blue Ridge.

"(6) The plaintiff failed to pay said compensation for the year 1951 or for any period after that time, and on February 26th, 1952, plaintiff gave notice to the defendant that no payment would be made of any 'tax or claim' of the City of Blue Ridge against the plaintiff, it being insisted by the plaintiff that said one percent (1%) gross income was a franchise or claim exempted under the Constitution and laws of the State of Georgia and that said plaintiff cooperative is not liable for said sum. On or about said date the City of Blue Ridge ceased to pay to the plaintiff cooperative the bills rendered for electric current and services, contending that said one percent (1%) of the gross income provided to be paid in said ordinance is not a tax, but is merely compensation by the plaintiff as a consideration for said franchise, and that the plaintiff cooperative is not exempt from

liability therefor under the provisions of the Constitution and laws exempting such cooperative from any tax, and that the defendant is entitled to offset its claim against the plaintiff. The amount of one percent (1%) of the gross income of the plaintiff during 1951 is the sum of $567.21, and for the first eleven months of 1952 the amount is $530.74.

"(7) It is agreed between the parties that the Judge of the Superior Court of Fannin County decide this case upon the facts herein stated without the intervention or a verdict of a jury, and render a judgment herein."

The ordinance granting the franchise referred to in the statement of facts was in the usual form, dated to take effect on October 26, 1948, and contained, among others, the provision that, "In consideration of the grant of this franchise Cooperative shall pay to the City of Blue Ridge as compensation therefor one percent (1%) of the annual gross income received from the sale of electric energy within the corporate limits of said city."

It is the contention of the plaintiff in error that the charge of 1% of the gross annual income derived from the sale of electric energy within the corporate limits of the City of Blue Ridge is a franchise or license tax from which the plaintiff, a non-profit electric membership corporation, is exempt under the provisions of the Constitution of 1945 (Code, Ann., § 2-5404), as implemented by the acts of the legislature (Ga. L. 1937, pp. 644, 657, Code, Ann. Supp., § 34A-130, and Ga. L. 1946, pp. 12-14, Code, Ann. Supp., § 34A-130.1). In the view we take of the case, however, it is unnecessary to decide whether the charge sought to be imposed upon the plaintiff by the City of Blue Ridge under the provisions of the charter ordinance is a tax or merely compensation for doing business within the city limits of the municipality.

The ordinance in this instance was specifically within the charter powers of the city, and the charge of 1% of the gross annual income was a necessary provision of the ordinance passed by the city granting the franchise to the plaintiff. The charter of the City of Blue Ridge granted by the General Assembly in 1935 provides: "Be it further enacted, that the mayor and councilmen of said city shall have power to grant franchises, easements, and rights of way over, in, under and on the public streets, lanes, alleys, parks, and other property of said city, on such terms and

conditions as they may fix; provided, that no such franchise shall be granted for a term'of more than twenty years, nor without compensation to said city, to be provided for in said franchise ordinance, which compensation shall be one percent of the annual gross income received from or on account of said franchise. This compensation shall be paid annually, and a failure thus to pay the same shall work a forfeiture of said franchise." Ga. L. 1935, pp. 928, 954, § 54. This provision of the charter was not impliedly repealed by the ratification of the Constitution of 1945 or by the passage of the Electric Membership Corporation Act of 1937, cited above, since the charter provision quoted does not per se relate to electric membership corporations, but to the right of the city to grant easements for the use of its streets by whatever kind of public-service corporation. Under that charter provision the city could not have lawfully granted the right to any person, firm, or corporation to use its streets for an electric distribution system without providing for the payment of the 1% of the gross earnings of such person, firm, or corporation, as compensation for such right. In *City of Summerville* v. *Ga. Power Co.*, 205 *Ga.* 843 (1) (55 S. E. 2d 540), it was said: "It is generally recognized that a franchise granted by a city council to a public-service corporation to use its streets and public places, where the city has the charter power to grant such a franchise, is a binding contract, and cannot be impaired in view of the prohibition against impairment of the obligation of contracts contained in the United States Constitution. . . The obligation resting upon the public utility to comply with the terms and conditions of the grant or franchise is generally considered a sufficient consideration to support such a contract. 23 Am. Jur. 718, § 6, and cit." In view of the foregoing, it follows that the franchise in the instant case was a contract which is binding upon both parties. Where one party contracts with another, he is estopped, after receiving the benefits accruing to him under the contract, to deny the right or authority of the other to make the contract or to collect the benefits due such other from him. *Oliver* v. *Hall County Memorial Hospital*, 62 *Ga. App.* 95 (4), 99 (8 S. E. 2d 138). Consequently, where the plaintiff here accepted the franchise contract, entered upon the streets, alleys, and public ways of the defendant city, erected poles, transmission lines, etc.,

and proceeded to supply electric energy to customers within the corporate limits of the city and to collect from its various customers within the corporate limits of the city, it is estopped to disclaim liability to the city under one portion of the contract while asserting its right to continue doing business under another part of the franchise contract. See, in this connection, Branch v. Jesup, 106 U. S. 468 (6) (1 Sup. Ct. 495, 27 L. ed. 279); Planters' & Miners' Bank v. Padgett, 69 Ga. 159 (1); Imboden v. Etowah & Battle Branch &c. Mining Co., 70 Ga. 86 (1), 106-108; Sellers v. Cox, 127 Ga. 246 (2), 252 (56 S. E. 284); Johnson v. Wilson, 165 Ga. 810 (2) (142 S. E. 70); Maddox v. Southern Mutual Life Ins. Assn., 6 Ga. App. 681, 683 (65 S. E. 789).

It follows that, under the facts stated, the trial judge did not err in entering the judgment in favor of the defendant.

*Judgment affirmed. Sutton, C.J., and Felton, J., concur.*