A91A0142. CITY OF LaGRANGE v. TROUP COUNTY ELECTRIC MEMBERSHIP CORPORATION.
(408 SE2d 708)

POPE, Judge.

Plaintiff/appellant City of LaGrange, Georgia, appeals the trial court's grant of defendant/appellee Troup County Electric Membership Corporation's (Troup EMC) motion for summary judgment and the trial court's denial of its motion for summary judgment.

Both the City and Troup EMC are electrical suppliers within the meaning of the Georgia Territorial Electric Service Act (the Act), OCGA § 46-3-1 et seq. The City is the primary supplier of electrical services within the corporate limits of LaGrange, and Troup EMC is a secondary supplier of electrical services there, as those terms are defined in the Act. OCGA § 46-3-3.

On or about December 23, 1975, the Mayor and the City Council of the City of LaGrange adopted the ordinance in question, which is currently codified as Section 30-1-17 (E) of the Code of the City of LaGrange. Section 30-1-17 classifies all businesses, professions, trades or callings for license and tax purposes and imposes a certain license fee or tax on all such businesses, professions, trades or callings. Subsection (E) currently provides as follows: "Electric services — Establishments engaged in the generation, transmission and/or distribution of electric energy for sale to premises in the city shall pay an amount equal to four (4) per cent of the gross sales of electricity to all customers serviced by each supplier within the corporate limits of the city for the preceding calendar year, as provided in and authorized by the Georgia Territorial Electric Service Act (Georgia Laws 1973, page

200, as amended).'[1]

Shortly before adopting the ordinance, the City entered into a franchise agreement with Georgia Power Company, the only other secondary supplier of electricity within the corporate limits of LaGrange, in which Georgia Power agreed to pay four percent of the gross sales of electricity to all of its customers to the City as a franchise fee beginning in March 1976. The City requested payment of the fee authorized by the ordinance from Troup EMC by letter dated January 8, 1976. After several letters between counsel for the parties, the City was informed that Troup EMC refused to pay the fee. The undisputed evidence shows that while there was limited oral discussion about this fee between the Manager of Troup EMC and the City Manager thereafter, the City did not make additional formal demands. Troup EMC maintains that the fee is not authorized by the Act, as the ordinance purports on its face, and that the City has no authority to collect such fees from it. In its amended complaint, the City sought $235,398.71, plus interest thereon, from Troup EMC as fees due from 1979 through 1987.

1. The City contends that the trial court erred in concluding that in order for the City to collect a franchise fee from Troup EMC there must be a franchise agreement or contract between the parties and that there was no express or implied agreement to that effect between the parties. In support of its argument the City relies upon this court's decision in *Tri-State Elec. &c. v. City of Blue Ridge*, 88 Ga. App. 717 (77 SE2d 547) (1953) and asserts that the trial court's distinction between a "franchise fee or tax" and a "license fee or tax" is unjustified.

The terms "franchise" and "license" are not synonymous, and therefore, the trial court properly distinguished between those rights and obligations derived from a franchise and those stemming from a license. "A franchise is a *contract* creating property rights. *City of Summerville v. Georgia Power Co.*, 205 Ga. 843 (1) (55 SE2d 540); *Atlantic C. L. R. Co. v. Southern R. Co.*, 214 Ga. 178 (2) (104 SE2d 77)." (Emphasis supplied.) *Macon Ambulance Serv. v. Snow Properties*, 218 Ga. 262, 265 (2) (127 SE2d 598) (1962). As the trial court correctly found, public utilities typically seek franchise rights from the governing authority in the area in which it seeks to provide services to use the streets and public ways for the purposes of rendering utility services. See OCGA § 36-34-2 (7).

" 'A license is a right granted by some competent authority to do

---

[1] Prior to its amendment in 1986, this section applied to "[a]ny electric light and power company furnishing retail service to premises in the City" rather than "[e]stablishments engaged in the generation, transmission and/or distribution of electric energy for sale to premises in the city."

an act which, without such authority, would be illegal.' [Cits.] The words 'license' and 'permit' are often used synonymously. [Cits.] Where, pursuant to the police power, a license is granted, *it is not a contract* and it may be abrogated. [Cit.]" (Emphasis supplied.) *Arlington Cemetery Corp. v. Bindig*, 212 Ga. 698, 702-703 (2) (95 SE2d 378) (1956). Thus, in order for a city to collect a franchise fee there must be a contractual relationship between the city and the party from whom the fee is sought, but a city can collect a license fee pursuant to its general police powers.

With these distinctions in mind, we will next examine the City's authority to collect the fees contemplated by the ordinance in question. As the trial court correctly found, both OCGA § 36-34-2 (7) and Section 5.21 of the Charter of the City of LaGrange empower the City to grant franchises for the use of City streets and public ways. Furthermore, the ordinance on its face purports to be authorized by the Act, as well. A review of the Act reveals that the only provision that could authorize the imposition of such a fee is OCGA § 46-3-14 (b), which provides in pertinent part: "No municipality may, by unreasonably withholding or conditioning right of way easements or franchises, defeat, impair, or interfere with the rights and restrictions applying to electric suppliers therein as provided for in this part. Rather, *any secondary supplier within a municipality* existing on March 29, 1973, and any electric supplier other than the primary supplier within any geographic area thereafter annexed to such municipality, *shall pay the municipality for street franchise rights* a sum of money calculated and payable in the same manner and on the same basis as is utilized with respect to the payment, if any, by the primary supplier (other than the municipality itself) for the same or substantially identical rights." (Emphasis supplied.) As the trial court also correctly held, the authority to enter into such agreements does not mean that there is a franchise agreement between the City and Troup EMC.

Assuming arguendo, that the fee in question is a franchise fee as authorized by the Act, the trial court correctly inquired as to whether a contract, either express or implied, existed between the parties since a franchise is a contract creating property rights. The City does not contend that it has an express agreement with Troup EMC, but only that there is an implied franchise agreement between the City and Troup EMC resulting from Troup EMC's acceptance of the privilege of using the City's streets after the enactment of the ordinance. We agree with the trial court that no contract has been created by implication in this case.

The City's ability to enter into franchise agreements is contained in Section 5.21 of its charter. That section provides, in pertinent part, as follows: "The mayor and council shall have the authority to exercise control over the use of the streets of the City of LaGrange. The

power is hereby conferred upon the mayor and council to grant franchises for the use of said city's streets and alleys, for the purposes of . . . electric companies. . . . The mayor and council shall determine the duration, provisions, terms, whether the same shall be exclusive or non-exclusive, and the consideration of such franchises; provided, however, that no franchise shall be granted for a period in excess of twenty (20) years and no franchise shall be granted unless the City receives just and adequate compensation therefore." (Italics omitted.) As the trial court correctly found, this section requires that before a franchise can be granted by the City, the City must not only receive compensation from the party but also must set forth specific terms and conditions pursuant to which the franchise is granted. These requirements found in the City's charter for a valid franchise agreement belie the City's position that a contract with Troup EMC was created by implication.

Furthermore, the undisputed evidence illustrates that Troup EMC never gave the City any reason to anticipate that it would receive compensation for allowing Troup EMC to use its streets and alleys. The City promptly informed Troup EMC that it had passed the ordinance in question and that it sought payment of the fee from Troup EMC. Troup EMC at all pertinent times disputed the City's right to collect such a fee from it. " '(T)he law will not imply a promise to pay for services contrary to the intention of the parties. There can be no recovery for services rendered voluntarily and with no expectation *at the time of the rendition* that they will be compensated. . . . Under such circumstances no obligation . . . is incurred. A subsequent change of intention by the parties performing the services does *not* alter the rule.' (Citations and punctuation omitted.) *Addison v. Southern R. Co.*, 108 Ga. App. 314, 315-316 (132 SE2d 833)." *Smith Dev. v. Flood*, 198 Ga. App. 817, 820-821 (403 SE2d 249) (1991). The City could have sought to enjoin the activities of Troup EMC until their dispute concerning the franchise agreement could be resolved. The City, however, did not seek to avail itself of that remedy. Troup EMC could have reasonably assumed from the City's conduct of simply allowing it to continue using city streets and alleys after it had refused payment of the fee, without instituting any legal action for approximately a decade, that the City acquiesced in its conduct and did not expect payment of the requested fee.

The City further argues that this case is so factually similar to this court's decision in *Tri-State Elec. &c.*, supra, that our decision in that case is determinative of this one. We disagree. In *Tri-State*, a nonprofit electric membership cooperative applied to the City of Blue Ridge for a franchise granting it the right to use the streets, alleys and public ways of such municipality for the distribution of electricity. The City of Blue Ridge then granted that franchise upon the con-

ditions set forth in an ordinance. Afterwards, the cooperative exercised its privileges under the franchise and paid the one percent fee charged by the City of Blue Ridge for the franchise for at least two years. Thereafter, the cooperative refused to pay the fee on the basis that the cooperative was exempt from paying that fee under the 1945 Georgia Constitution. Id. at 719-720. This court found in that case that neither the ratification of the 1945 Georgia Constitution nor the passage of the Electric Membership Corporation Act of 1937 repealed the City of Blue Ridge's ability under its charter to enter into such franchise agreement and collect compensation for the granting of a franchise. Id. at 721.

While the City is correct that its charter provision enabling it to enter into franchise agreements is similar to the one in *Tri-State*, contrary to the City's assertions, the charter provision did not create the contract between the City of Blue Ridge and the cooperative. It was only the passage of the ordinance specifically granting the cooperative a franchise, after the cooperative applied for a franchise, that formed the *express* contractual agreement between the parties. If Georgia Power, the only other secondary supplier of electricity in the corporate limits of the City of LaGrange, refused to fulfill its contractual obligations contained in its franchise agreement with the City, the *Tri-State* decision would offer controlling precedent. In this case, however, the City seeks to impose a franchise agreement on Troup EMC through its unilateral act of passing an ordinance that allows it to collect a certain fee from "[e]stablishments engaged in the generation, transmission and/or distribution of electric energy for sale to premises in the city. . . ." For this reason, *Tri-State* offers inapposite precedent in this case.

2. Having found that there was no implied contract giving rise to a franchise agreement between the parties, the trial court then examined whether the City could collect the disputed fee sought from Troup EMC through its licensing authority. As was discussed briefly above, the ordinance in question was codified as part of Title 30 of the LaGrange City Code, which deals with licenses and business regulations. That title of the City Code recites that the City's licensing power is derived from Sections 4.15 and 5.20 of the Charter of the City of LaGrange. The City alleges that the trial court erred in finding that Sections 4.15 and 5.20 of its charter do not allow the City to levy a license or franchise tax upon Troup EMC and in finding that the more specific language contained in Section 5.20 controls over the more general language of Section 4.15.

As the trial court correctly noted, the courts of this state "have long recognized that the basic power to tax belongs to the state. For a municipality to possess this power it must be conferred upon the municipality either directly in the constitution or by statute. It must be

conferred in 'plain and unmistakable terms.' *Southern Express Co. v. R. M. Rose Co.*, 124 Ga. 581, 588 (53 SE 185) (1905); *Lewis & Holmes Motor Freight Corp. v. City of Atlanta*, 195 Ga. 810 (25 SE2d 699) (1943)." *Camden Tel. &c. Co. v. City of St. Marys*, 247 Ga. 687, 688-689 (279 SE2d 200) (1981). The trial court closely and correctly examined the authorizing charter provisions to determine if the City's right to collect the fee in question is conferred on the City in "plain and unmistakable terms." Those sections are set forth below:

"Section 4.15 — *License and Occupational Taxes.* The mayor and council by ordinance shall have full power to levy such license and specific or occupation taxes upon the residents of the City of LaGrange, both individual and corporate, and on all those who transact or offer to transact business therein, or who practice or offers to practice any profession or calling therein, as the mayor and counsel may deem expedient for the public health, safety, benefit, convenience, or advantage of the city; to classify businesses, occupations, professions or callings for the purpose of such taxation in any way which may be lawful; to require such persons to procure licenses; to compel the payment of such licenses by execution or any other lawful manner; and to make laws and regulations necessary or proper to carry out the powers herein conferred, and to prescribe penalties for the violation thereof."

"Section 5.20 — *Power to Regulate and License.* The mayor and the council shall have the power and authority to provide by ordinance for the registration and licensing of any trade, business, occupation, vocation, profession or any and every other undertaking *pursued for the purpose of personal gain or profit of whatever nature,* engaged in or carried on within the limits of the City of LaGrange, regardless whether or not the subject has an office or establishment within said city. The mayor and council shall be authorized to fix the amount, terms, and manner of issuing and revoking licenses, provided that this authority is subject to the Constitutions and laws of the United States and the State of Georgia. This power is conferred for the purpose of regulation under the police powers of the city and for the purpose of raising revenue for the operating of the city government through the imposition of a tax or fee on the privilege of operation within the city. This authority extends over individuals, partnerships, associations, corporations and their agents." (Emphasis supplied.)

Finding that the business transacted by Troup EMC would fall within the more general "transact[ing] business" language of Section 4.15, but outside the more specific language of a "business . . . pursued for the purpose of personal gain or profit" contained in Section 5.20, the trial court correctly applied the rule of construction that the "specific statute will prevail over the general statute, absent any indi-

cation of a contrary legislative intent" to resolve the inconsistency between those sections. *First Nat. Bank v. Sinkler,* 170 Ga. App. 668, 670 (317 SE2d 897) (1984).[2]

The trial court also properly found that the nonprofit characteristics of Troup EMC exempted it from the licensing power of the City pursuant to Section 5.20 of the City Charter. Troup EMC is required by statute to "[operate] without profit to its members." OCGA § 46-3-340. Its bylaws also explicitly provide that it can operate only on a nonprofit basis.

The City's reliance on *Lamar Elec. Membership Corp. v. Carroll,* 89 Ga. App. 440 (79 SE2d 832) (1953), for the proposition that this court has established that electric membership corporations are for profit entities as a matter of law is erroneous. In that case, the Lamar Electric Membership Corporation argued that an electric membership corporation was not a corporation within the meaning of the applicable section of the Georgia Code governing suits against electric corporations. This court was called upon in that case to decide if an electric membership corporation was in the "business of generating and transmitting electricity." This court found that the nonprofit nature of electric membership corporations did not mean that it was not engaged in business within the meaning of the applicable statute because even an operation pursued for the improvement of the economic condition of shareholders (or members in the case of electric membership corporations) was sufficient to constitute doing business. Id. at 451-453. That case did not hold that electric membership corporations are for profit entities as a matter of law.

The City also relies upon this court's decision in *Thompson v. Sawnee Elec. Membership Corp.,* 157 Ga. App. 561 (278 SE2d 143) (1981), to support its position that electric membership corporations are for-profit entities. In that case, this court found that the members of an electric membership corporation are disqualified from serving as jurors in a suit against the corporation because the members have a right to share in the earnings of the corporation. Id. at 562-563. That ruling, however, did not affect the nonprofit nature of electric membership corporations dictated by the Georgia legislature. Accordingly, the City's argument that this court has held as a matter of law that electric membership corporations are for profit entities must fail.

3. The City's final enumeration of error charges that the trial court erred in failing to grant its motion for summary judgment. Because we find the trial court's grant of Troup EMC's motion for summary judgment to be proper for the reasons set forth above, it is axio-

---

[2] The City admits, and the trial court properly found, that the fee in question is a revenue producing measure and not merely for regulatory purposes.

matic that this enumeration of error must also fail.

*Judgment affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED JUNE 25, 1991 —
RECONSIDERATION DENIED JULY 12, 1991 — 

*Hurt, Richardson, Garner, Todd & Cadenhead, L. Clifford Adams, Jr., Lewis & Taylor, James R. Lewis,* for appellant.

*Paul, Hastings, Janofsky & Walker, James A. Orr, Kathy R. Bess, Wyatt, Wyatt & Solomon, Charles E. Solomon, Jr.,* for appellee.