## S93G1681. CITY OF CALHOUN v. NORTH GEORGIA ELECTRIC MEMBERSHIP CORPORATION.

(443 SE2d 469)

CARLEY, Justice.

Resolution of the instant appeal requires an interpretation and application of OCGA § 46-3-1 et seq., the Georgia Territorial Electric Service Act (Act). Under the Act's applicable definitions, appellant-plaintiff City of Calhoun (City) is the "primary supplier" of electricity within its corporate limits. OCGA § 46-3-3 (7). Appellee-defendant North Georgia Electric Membership Corporation (NGEMC) is one of two "secondary suppliers" of electricity within the City's corporate limits, the other "secondary supplier" being Georgia Power Company. OCGA § 46-3-3 (8).

In 1987, ordinances were passed which addressed the City's grant of a street franchise to both NGEMC and Georgia Power Company. These ordinances, which NGEMC had strenuously opposed, provided for payment to the City of a franchise fee of four percent of the amount of sales made by NGEMC and Georgia Power Company to their customers in the City and further provided that, within ninety days, NGEMC and Georgia Power Company were to give their "written acceptance" of the proposed street franchise and the four percent franchise fee, "so as to form a contract between the parties." Georgia Power Company provided its timely written acceptance of the City's grant of a street franchise and began to pay the City the four percent franchise fee. NGEMC did not, but it nevertheless did continue to provide electricity to its customers over lines which ran along the streets within the City's corporate limits.

The City brought suit against NGEMC, seeking to recover the four percent franchise fee. The trial court granted summary judgment in favor of NGEMC. The City appealed and the Court of Appeals affirmed, holding that the City could not recover the four percent franchise fee from NGEMC under either an express contract or a quasi-contract theory. *City of Calhoun v. N. Ga. EMC*, 209 Ga. App. 547 (433 SE2d 698) (1993). We granted the City's application for a writ of certiorari.

1. The City is specifically authorized by statute

> to grant franchises to . . . electric light or power companies . . . for the use and occupancy of [its] streets . . ., for the purpose of rendering utility services, upon such conditions and for such time as [its] governing authority . . . may deem wise and *subject to the Constitution and the general laws of this state.*

(Emphasis supplied.) OCGA § 36-34-2 (7). Accordingly, any limita-

tion on the City's authority to require that NGEMC obtain a street franchise and pay a franchise fee as a condition of the grant thereof would be dependent entirely upon the existence of a constitutional provision or a general law of this state.

There is no constitutional provision which would prohibit the City from requiring that NGEMC obtain a street franchise. Likewise, the Act itself is certainly not a general law of this state which provides for such a prohibition on the City's authority under OCGA § 36-34-2 (7). OCGA § 46-3-14 (c).

The question thus becomes whether the City is further authorized to *condition* its grant of the requisite street franchise upon NGEMC's payment of a franchise fee. There is no constitutional provision which would prohibit the City from imposing such a condition. NGEMC urges, however, that the Act is a general law of this state which does provide for such a limitation on the City's authority under OCGA § 36-34-2 (7). In this regard, NGEMC relies upon OCGA § 46-3-14 (b), which provides, in relevant part, that

> [n]o municipality may, by unreasonably withholding or conditioning . . . franchises, defeat, impair, or interfere with the rights and restrictions applying to electric suppliers therein as provided for in [the Act]. Rather, any secondary supplier within a municipality . . . shall pay the municipality for street franchise rights a sum of money calculated and payable in the same manner and on the same basis as is utilized with respect to the payment, if any, by the primary supplier (other than the municipality itself) for the same or substantially identical rights.

The first sentence of OCGA § 46-3-14 (b) is certainly a general limitation on the City's authority under OCGA § 36-34-2 (7) to deny NGEMC a street franchise. To the extent that NGEMC has rights under the Act as a "secondary supplier," those rights may not be defeated, impaired, or interfered with by means of the City's imposition of an *unreasonable condition* upon the grant of a street franchise. However, nothing in the first sentence of OCGA § 46-3-14 (b) purports to prohibit the City from conditioning its grant of a street franchise to NGEMC upon the payment of a *reasonable franchise fee*.

Unlike the first sentence, the second sentence of OCGA § 46-3-14 (b) does relate to the specific topic of the imposition of franchise fee as a condition of the grant of a street franchise to a "secondary supplier." Under NGEMC's interpretation, the second sentence of OCGA § 46-3-14 (b) exempts a "secondary supplier" from being charged a franchise fee where the "municipality itself" is also the "primary sup-

plier."

However, the introductory language of the second sentence of OCGA § 46-3-14 (b) provides that "*any secondary supplier* within a municipality . . . *shall pay the municipality* for street franchise rights *a sum of money.* . . ." (Emphasis supplied.) The clear import of this language is that "any secondary supplier" *can* be charged a "sum of money" for a street franchise.

The remaining language of the second sentence of OCGA § 46-3-14 (b) does not otherwise qualify the import of the introductory language that "any secondary supplier" *can* be charged a street franchise fee. That remaining language relates *solely* to the establishment of a standard with which the franchise fee charged "any secondary supplier" is to comply. It provides that the "sum of money" that "shall" be paid by "any secondary supplier" to the "municipality" is to be "*calculated and payable* in the *same manner* and on the *same basis* as is utilized with respect to the payment, if any, by the *primary supplier (other than the municipality itself)* for the same or substantially identical rights." (Emphasis supplied.) Thus, there is no *exemption* of "any secondary supplier" from the payment of a street franchise fee, merely a specification that the "manner" and the "basis" upon which the franchise fee of the "primary supplier (other than the municipality itself)" has been "calculated" and made "payable" must likewise control the "manner" and the "basis" upon which the franchise fee of "any secondary supplier" is to be "calculated" and made "payable."

Since the "municipality itself" is specifically *excluded* from the controlling class of "primary suppliers," the second sentence of OCGA § 46-3-14 (b) is a statutory *preservation* of the right of a "municipality" under OCGA § 36-34-2 (7) to charge "any secondary supplier" a franchise fee, even where the "municipality itself" is also the "primary supplier." "[A]ny secondary supplier" is to pay a franchise fee "calculated and payable in the same manner and on the same basis as is utilized with respect to the payment, if any, by the primary supplier . . . for the same or substantially identical rights," *except* when the "primary supplier" pays nothing "for the same or substantially identical rights" because the "primary supplier" is also the "municipality itself." In that event, "any secondary supplier" *cannot* avoid payment of a franchise fee simply because the "municipality" pays "itself" no franchise fee in its additional capacity as the "primary supplier."

2. The holding in Division 1 that NGEMC is not exempt from the City's imposition of a franchise fee does not establish that the City is necessarily entitled to recover the four percent franchise fee that it seeks in the instant case. "A franchise [fee] is [payment in consideration of] a *contract* creating property rights." (Emphasis supplied.)

*Macon Ambulance Svc. v. Snow Properties*, 218 Ga. 262, 265 (2) (127 SE2d 598) (1962). The Court of Appeals did not hold that the City cannot recover the four percent franchise fee for lack of authority to impose it, but because there is no enforceable contractual agreement which obligates NGEMC to pay it. The City urges that this holding is erroneous.

The City's ordinance specifically provided that, within ninety days, NGEMC was to give its "written acceptance" of the proposed street franchise and the four percent franchise fee, "so as to form a contract between the parties." Thus, the City's offer contemplated the creation of an enforceable contract by NGEMC's timely "written acceptance" which was never forthcoming. It follows that an express contract obligating NGEMC to pay the City the four percent franchise fee was never created.

> [W]here an express acceptance by the opposite party is required by the offer in order to establish a contract, the fact of such subsequent acceptance must be communicated to the offerer by the opposite party or competent agent of such party . . . . [Cits.]

*Federal Farm Mtg. Corp. v. Dixon*, 185 Ga. 466, 469 (1) (195 SE 414) (1938). See also *Valiant Steel &c. v. Roadway Express*, 205 Ga. App. 237 (1) (421 SE2d 773) (1992).

The City contends that it nevertheless can recover the four percent franchise fee under a quasi-contract theory. However,

> a recovery in quantum meruit involves the question of the reasonable value of the services rendered and the prices contained in the express contract would not be binding.

*Williams v. Claussen-Lawrence Constr. Co.*, 120 Ga. App. 190, 192 (169 SE2d 692) (1969). Thus, under a quasi-contract theory, the City could not recover a four percent franchise fee unless it could otherwise demonstrate that such an amount was the reasonable value of its grant of a street franchise. The City would not be entitled to recover a four percent franchise fee simply because the ordinance provides for a franchise fee in that amount and Georgia Power Company, as the other "secondary supplier," has expressly contracted to pay the City that amount for its street franchise.

In any event, however, no amount of money can be recovered by the City under a quasi-contract theory unless there was an implied promise on the part of NGEMC to pay for street franchise rights.

> " 'The rule as generally stated is that where one renders beneficial services for another, the law ordinarily presumes a

request and promise to pay what such services are reasonably worth, . . . unless they were rendered under circumstances which repel this presumption. But the law will not imply a promise to pay for services contrary to the intention of the parties.' [Cit.] 'There can be no recovery for services rendered voluntarily and with no expectation at the time of the rendition that they will be compensated, and this is true whether the services were or were not beneficial. Under such circumstances no obligation, whether legal or moral, is incurred. A subsequent change of intention by the parties performing the services does not alter the rule.' [Cit.]"

*Addison v. Southern R. Co.*, 108 Ga. App. 314, 315-316 (132 SE2d 833) (1963). See also *Smith Development v. Flood,* 198 Ga. App. 817, 819 (3) (b) (403 SE2d 249) (1991).

Under the undisputed evidence, the City has never had a reasonable expectation that any payment for street franchise rights would be received from NGEMC. Compare *Tri-State Elec. Co-op. v. City of Blue Ridge,* 88 Ga. App. 717 (77 SE2d 547) (1953). Indeed, NGEMC has, at all times, unequivocally apprised the City that no payment of a franchise fee would ever be forthcoming. Despite NGEMC's consistent refusal to pay any franchise fee, the City did not seek "to enjoin the activities of [NGEMC] until their dispute concerning the franchise agreement could be resolved." *City of LaGrange v. Troup County EMC,* 200 Ga. App. 418, 421 (1) (408 SE2d 708) (1991). Instead, the City has merely continued to allow its streets to be used and occupied by NGEMC. Based solely upon that continued permissive use and occupancy, the City now seeks to enforce against NGEMC an obligation for payment which heretofore NGEMC steadfastly has refused to accept. The City cannot rely upon its own unilateral act of continuing to allow its streets to be used and occupied as evidence of an enforceable implied promise on the part of NGEMC to pay a franchise fee which NGEMC has expressly rejected.

When goods or materials may have been furnished or services have been rendered . . . after being advised that the recipient had no intention to pay for the same, . . . no promise to pay will be implied in fact.

6 EGL 285, Contracts, § 44 (1989 rev.).

It follows that the City cannot recover a franchise fee for the use and occupancy of its streets to date, since there is presently no enforceable contractual agreement which obligates NGEMC to pay such a fee.

3. For the reasons discussed in Division 1, the City is authorized

to adopt an ordinance conditioning the future grant of the requisite street franchise upon NGEMC's payment of a reasonable franchise fee and NGEMC will be obligated to accept the grant of a street franchise on that condition if it intends to continue to use and occupy the City's streets for the purpose of providing electricity to its customers who live in the City. Upon the adoption of such an ordinance, NGEMC's continued use and occupancy of the City's streets for said purpose will render NGEMC liable for the payment of such fees and entitle the City to enforce compliance with such ordinance by an appropriate proceeding at law or in equity. For the reasons discussed in Division 2, however, the City is not authorized to recover, under an express or quasi-contract theory, a street franchise fee for NGEMC's past use and occupancy of the City's streets. Accordingly, the judgment of the Court of Appeals is hereby affirmed.

*Judgment affirmed. All the Justices concur.*

FLETCHER, Justice, concurring.

I write separately to make it clear that in this action the City's claims do not fail because the City is without authority to impose by ordinance a reasonable fee for the use and occupancy of its streets which NGEMC is required to accept, subject to its right to challenge the reasonableness of the fee. Rather, the City's claims fail because the ordinance as written conditioned NGEMC's obligation to pay the fee on NGEMC's "acceptance" of the ordinance within 90 days from the ordinance's passage. Absent this conditional language, the ordinance is a proper invocation of the City's authority to impose upon electric suppliers a fee for their use and occupancy of its streets which electric suppliers are obligated to pay if they elect to continue to use such property.[1]

The conclusion that the City is authorized to impose such a fee is further supported by the clear legislative intent of the Georgia Territorial Electric Service Act, OCGA § 46-3-1 et seq., which requires an electric supplier to obtain permission from a municipality to "use and occupy streets of an incorporated municipality for the purpose of rendering utility services,"[2] and provides that a municipality may not

---

[1] In this regard, I believe the opinion makes it clear that *City of LaGrange v. Troup County EMC*, 200 Ga. App. 418 (408 SE2d 708) (1991) does not stand for the proposition that a municipality is prohibited from imposing upon an electric supplier a fee for the use of its streets in the absence of a negotiated agreement.

[2] The statutory scheme of the Act requiring the electric supplier to obtain the municipality's permission to use its streets and rights of way is consistent with other Georgia statutes pertaining to municipal streets. See OCGA § 36-30-10 (prohibiting municipality from granting to any person the right to erect or maintain a structure or obstruction in a public street); OCGA § 32-4-92 (a) (7) (granting power to municipality to regulate and control streets within its corporate limits) and (a) (10) (granting power to municipality to grant permits and establish regulations for use of streets within corporate limits by utility companies);

unreasonably withhold or condition right of way easements or franchises to electric suppliers. OCGA § 46-3-14 (b) and (c). The Act further provides that an electric supplier "shall pay the municipality for street franchise rights a sum of money . . . ." OCGA § 46-3-14 (b). Accordingly, the City is clearly authorized by both this statutory scheme and the holding in Division 1 to impose upon electric suppliers by ordinance a reasonable fee for the use of its streets which an electric supplier must accept if it elects to continue to use and occupy the City's streets.

Finally, although I agree that NGEMC's refusal to "accept" the ordinance precludes a finding of a quasi-contract, I cannot agree with all that is said in Division 2 concerning NGEMC's "continued permissive use and occupancy" of the City's streets. The City passed the challenged ordinance in 1987 and soon thereafter sought to collect the four percent fee from NGEMC. NGEMC refused to make any payment to the City for its use of the City's property and, within a reasonable time after the ordinance's passage, the City filed its complaint seeking to protect its property rights and recover compensation from NGEMC. Under these facts, I do not agree with Division 2's characterization of NGEMC's continued use of the City's property as "permissive." Such a characterization, together with the citation to *City of LaGrange v. Troup County EMC*, 200 Ga. App. 418 (408 SE2d 708) (1991), possibly leaves the impression that, in order for NGEMC's use of the City's streets to be anything but permissive and gratuitous, the City would be required to first seek injunctive relief.[3] However, such an election of remedies is not legally required as is made clear by the holding in Division 3 that upon adoption of a proper ordinance it may be enforced "by an appropriate proceeding at law or in equity."[4]

---

OCGA § 46-3-201 (b) (10) (empowering electric membership corporations to use municipality's streets and rights of way subject to reasonable terms and conditions as determined by the municipality); see also *City of Moultrie v. Colquitt County Rural Electric Co.*, 211 Ga. 842 (2) (89 SE2d 657) (1955); *City of Nashville v. Snow*, 204 Ga. 371, 379 (49 SE2d 808) (1948).

[3] Neither equitable principles nor the electric supplier's exclusive or non-exclusive right to provide electric service supports such a limited remedy to the wrongful use of the City's streets. Nor is the remedy of injunctive relief, as a practical matter, a remedy at all. If the City is required to seek injunctive relief as its only available remedy or as a prerequisite to the imposition of other damages, it would be placed in the unenviable position of choosing between the protection of its rights or seeking to discontinue or disrupt electric service to over 800 Calhoun households and businesses served by approximately 15 miles of NGEMC's lines within the city limits. Although ultimately the City may be made whole through the litigation, the public would not be compensated for such harms. In cases such as this, an injunction would only injure the public to no one's advantage and it should not be made a prerequisite to money damages.

[4] On this appeal we have considered only the City's right to recover a franchise fee for NGEMC's use and occupancy of the City's streets under the asserted contract and quasi-

I am authorized to state that Presiding Justice Benham and Justice Hunstein join in this concurrence.

DECIDED MAY 2, 1994 —
RECONSIDERATION DENIED MAY 26, 1994.

*Alston & Bird, G. Conley Ingram, L. Clifford, Adams, Jr., Robert J. Middleton, Jr., Bailey & Bearden, William P. Bailey,* for appellant.

*James C. Brim, Jr., Robert C. Richardson, Jr., Kinney, Kemp, Pickell, Sponcler & Joiner, L. Hugh Kemp,* for appellee.

*Lewis, Taylor & Todd, James R. Lewis, Jeffrey M. Todd, C. Jerome Adams, Webb, Tanner & Powell, Anthony O. L. Powell, R. Jack Wilson, Hulsey, Oliver & Mahar, Julius M. Hulsey, Theresa F. Gilstrap, Walter E. Sumner, Whelchel, Whelchel & Carlton, Hoyt H. Whelchel, Jr., Al Grieshaber, Jr., Sutherland, Asbill & Brennan, James A. Orr, Tisinger, Tisinger, Vance & Greer, Richard G. Tisinger,* amici curiae.

---

contract theories. We have not determined whether the City would be entitled to relief for NGEMC's past use and occupancy of the City's streets under any other legal doctrine.