[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 16, 2003
THOMAS  K. KAHN
CLERK

————————————————————

No. 02-15969

_____
D. C. Docket No. 01-00182-CV-4-CAR-5

ALLTEL COMMUNICATIONS, INC.,

Plaintiff-
Counter-Defendant-
Appellee,

versus

CITY OF MACON,

Defendant-
Counter-Claimant-
Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(September 16, 2003)**

Before ANDERSON and BIRCH, Circuit Judges, and PROPST*, District Judge.

_____
* Honorable Robert B. Propst, United States District Judge for the Northern District of Alabama, sitting by designation.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR

THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA

PURSUANT TO O.C.G.A. § 15-2-9.

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE
JUSTICES:

The City of Macon, Georgia (Macon) appeals a declaratory judgment

granted to Alltel Communications, Inc. (Alltel) and a permanent injunction

imposed against Macon. In deciding the ultimate issues of this case, we must first

determine whether the district court properly interpreted and applied Georgia law.

Because the district court concluded, and the parties agree, that this case involves

issues of Georgia law which have not been directly decided, we certify a question

of law to the Supreme Court of Georgia and postpone any further consideration of

the appeal in this case until we receive an answer from that court.

Background[1]

Alltel is a telecommunications company providing telephone service

throughout the United States, using a network of fiber optic cable. In July 1997,

Alltel contracted with Georgia Power Company for the purpose of installing fiber

optic cable on utility poles owned and maintained by Georgia Power along city

---

[1]The parties stipulated the facts. This court will not fully repeat those stipulated facts.

streets within Macon. Pursuant to the existing municipal ordinance, Alltel sought and obtained a permit from Macon on July 4, 1997, authorizing placement of the fiber optic cable. Alltel installed a total of 25,555 feet of fiber optic cable. None of the cable was installed upon the rights-of-way which are under the direct authority of the Georgia Department of Transportation. From July 1997 through April 11, 2000, the City charged a $2.00 per linear foot annual permit fee under Section 18-153 of Article VII, Chapter 18 of the Code of Ordinances for Macon. Alltel paid the fees without objection. The purpose of the ordinance is to " . . . govern the compensation charged by the City in its franchising and licensing of telecommunications providers and in the City's management of the use of the public right-of-way within the corporate limits and boundaries of the City."

On July 8, 1999, Macon amended the ordinance, increasing the permit fee from $2.00 to $4.50 per linear foot ("the Amended Ordinance"). On April 11, 2000, Macon submitted an invoice to Alltel for $114,997.50 for one-year fees under the Amended Ordinance. Alltel has refused to pay this amount, contending that Macon cannot charge $4.50 per foot but rather is limited to $5,000 per mile ($0.947 per foot), the rate charged by the Georgia Department of Transportation on its rights-of-way.

<u>The Proceedings In The District Court</u>

3

On April 4, 2001, Alltel filed its complaint. Alltel alleged two counts. In Count I, it charged that the Amended Ordinance violated the federal Telecommunications Act, 47 U.S.C. § 253(a), because it assessed a fee which was not fair and reasonable and because its effect was to "prohibit" Alltel from providing interstate or intrastate telecommunications service.[2] In Count II, it alleged that the Amended Ordinance violated Georgia Code § 34-4-92 (and related code sections) because it charged more than the maximum permitted by the Department of Transportation under Regulation 672-11-03. Alltel sought a declaratory judgment. Macon filed a counterclaim for unpaid permit fees.

The parties filed cross-motions for summary judgment. On September 27, 2002, the district court entered an order granting Alltel's motion and concluding that under Georgia Code § 32-4-92(a)(10), Macon's Amended Ordinance was invalid because it is "preempted by state law" and charges a rate that exceeds that

---

[2]The district court did not address this claim. In *Bell South Communications, Inc. v. Town of Palm Beach*, 252 F.3d 1169, 1176 (11th Cir. 2002), this court stated:

> Because federal preemption of a state or local law is premised on the Supremacy Clause of the United States Constitution, *see Bosarge v. United States Dep't of Educ.*, 5 F.3d 1414, 1419 (11th Cir. 1993), and because of the longstanding principle that federal courts should avoid reaching constitutional questions if there are other grounds upon which a case can be decided, *Santamorena v. Ga. Military Coll.*, 147 F.3d 1337, 1343 (11th Cir. 1998), we first decide whether the ordinances are preempted by Florida state law before considering whether they are federally preempted by the Act.

Since we are certifying state law issues to the Supreme Court of Georgia, we do not presently reach this federal issue.

4

charged by the Georgia Department of Transportation (D.O.T.). The court

enjoined Macon from enforcing the Amended Ordinance.

Both sides agree that the standard of review is *de novo.*

Positions of Parties[3]

Macon's Position[4]

Section 32-4-92(a)(10) and its cross-reference to § 32-6-174 are intended to

address only technical issues such as installation, construction, maintenance,

removal, etc., and do not limit a municipality's right to charge a revenue producing

and licensing fee. There is no authority directly on point. However, the statute

reads:

> A municipality may grant permits and establish reasonable regulations for the *installation, construction, maintenance, renewal, removal, and relocation* of pipes, mains, conduits, cables, wires, poles, towers, traffic and other signals, and other equipment, facilities, or appliances of any utility in, on, along, over, or under any part of its municipal street system and of a county road system lying within its municipal limits. *However, such regulations shall not be more restrictive with respect to utilities affected thereby than are equivalent regulations promulgated by the department with respect to utilities*

---

[3]This court will summarize the respective positions of the parties without approval or rejection. These summaries are not intended to limit the arguments of the parties before the Supreme Court of Georgia.

[4]The Georgia Municipal Association has filed an *amicus curiae* brief making essentially the same arguments as Macon.

> *on the state highway system under authority of Code Section 32-6-174.*

Ga. Code Ann. § 32-4-92(a)(10)(2002)(emphasis added). All the terms of the statute focus on technical matters. Under the doctrine of *noscitur a sociis*, the naming of a word is to be determined from the accompanying word. *See Haddon v. Shaheen & Co.*, 499 S.E.2d 693, 695 (Ga. Ct. App. 1998)(citations omitted). Also, under the doctrine *expressio unius est exclusio alterius*, the expression of one thing implies the exclusion of others. *See In re Copelan*, 553 S.E.2d 278, 287 (Ga. Ct. App. 2002). Under these canons of statutory construction, it is clear that the "permit" authorized by the statute deals with installation, construction, etc., and nothing more.

Georgia Code § 32-6-174, which is referenced in the statute at issue, was also passed as part of the 1973 legislation. It contains the same "technical" language found in the statute at issue. At the time the statutes were passed, there were no D.O.T. regulations addressing fees, and the legislature was simply trying to insure that utilities were not presented with conflicting responsibilities. For example, the statutes were designed to keep municipalities and the D.O.T. from requiring that the same cables be constructed from different materials. The last sentence of § 32-6-174 reads: "In addition to the requirements of such department regulations, it shall be the responsibility of the utility to obtain whatever franchise

6

is required by law." Obviously, this statute contemplates that utilities may have to acquire franchises pursuant to Georgia Code § 36-34-2(7).

The D.O.T. did not intend for its 1985 fee schedule to limit or affect municipal fees, and if Alltel's interpretation is correct, the regulation is an invalid delegation of legislative power. The D.O.T's regulations apply only to the state highway system and roads funded with federal aid. The fees would apply to all roads if the regulations were intended to limit a municipality's power. Nowhere in the regulations is it indicated that the D.O.T. intended or expected that its fees would govern what could be charged by a municipality. These fee regulations are more akin to the state's regulating power, while the Amended Ordinance is more akin to the revenue raising power.

As to the separation of powers argument, i.e., that D.O.T. was supposed to take over a municipality's taxing/franchising power, Macon notes that a delegation of legislative power must provide "sufficient guidelines" to avoid violating the Georgia Constitution. *See Dep't of Transp. v. City of Atlanta*, 398 S.E.2d 567, 571-72 (Ga. 1990). Further, an administrative rule that "exceeds the scope of or is inconsistent with the authority of the statute upon which it is predicated is invalid." *Dep't of Human Resources v. Siggers*, 463 S.E.2d 544, 546 (Ga. Ct. App. 1995)(citation omitted). Georgia Code § 32-4-92(a)(10) does not indicate whether

7

it is a "regulatory" power statute or a "revenue-raising" and/or "franchise" statute as set out in § 36-34-2(7).  No guidance was given about "rural" versus "urban" fee areas.  There are simply no guideposts at all.  Thus, if Alltel's interpretation is correct, there has been an improper delegation of power.

A statute that is nearly identical to § 32-4-92(a)(10) has been interpreted in a way favorable to Macon's position.  Georgia Code § 32-4-42(6), which applies to county governments, has the same "technical" language as the statute at issue.  It also references the D.O.T. fees pursuant to § 32-6-174.  In *DeKalb County v. Georgia Power Co.*, 292 S.E.2d 709 (Ga. 1982), the court, interpreting § 32-4-42(6), stated:

> DeKalb County is not entitled to extract from the power company a tax, franchise fee, rental fee, or other charge (however designated) in return for permission to use the county's road rights-of-way outside of municipalities for the erection, maintenance and use of power transmission lines.

*Id*. at 710.  The fact that counties are not entitled to charge any fee at all under that statute reinforces the argument that the subject statute only addresses technical matters.  Since it only addresses technical matters, § 32-4-92(a)(10) was not intended to limit Macon's franchise power under § 36-34-2(7).  Macon also cites an Attorney General's opinion, which it argues is consistent with its position.

8

Macon's power to impose a franchise fee is found in § 36-34-2(7) and is not limited by § 32-4-92(a)(10). The "franchise" power was enacted in 1963, eleven years before the statutes at issue. Section 36-34-2(7) states that municipalities have the power to "grant franchises to or make contracts with . . . electric light or power companies, gas companies, steam-heat companies, telephone and telegraph companies, water companies, and other public utilities for the use and occupancy of the streets of the city . . . ." Although not directly on point, numerous cases have upheld a municipality's right to charge a franchise fee, specifically under this statute. *See, e.g., Athens-Clarke County v. Walton Elec. Membership Corp.*, 454 S.E.2d 510 (Ga. 1995); *City of Calhoun v. N. Ga. Elec. Membership Corp.*, 443 S.E.2d 469 (Ga. 1994). In none of these cases did the court hold, or even suggest, that a municipality's power is in any way limited by § 32-4-92(a)(10). No contract is required in order to support a municipality's exercise of its franchise power. *See Athens-Clarke*, 454 S.E.2d at 513. Thus, even though Alltel has refused to follow the Amended Ordinance and sign the permit, it is still required to pay the fee.

Finally, Macon argues that the substance, and not the title, of the Amended Ordinance should control. The Georgia Court of Appeals has held that there is a difference between a "franchise" and a "license." *See City of LaGrange v. Troup*

*County Elec. Membership Corp.*, 408 S.E.2d 708, 710 (Ga. Ct. App. 1991). Here, the Amended Ordinance requires a permit, which, at first blush, arguably suggests something besides the exercise of the franchise power. However, the "distinction between a tax and a license is not one of names but of substance." *DeKalb County v. Atlanta Gas Light Co.*, 186 S.E.2d 732, 734 (Ga. 1972)(*quoting Richmond County Business Ass'n, Inc. v. Richmond County*, 165 S.E.2d 293, 295 (Ga. 1968)). Here, although the word "permit" is used, the Amended Ordinance states that it is an ordinance governing the "compensation . . . in franchising and licensing."

Alltel's Position

Section 32-4-92(a) establishes the power of Georgia municipalities to regulate the use of municipal rights-of-way and places limitations on those powers. The language is clear and unambiguous. The regulations promulgated by the D.O.T. affect "long distance cables," which would clearly include the fiber optic cables at issue here. The Georgia legislature has given a limited grant of regulatory power to Georgia municipalities regarding municipal rights-of-way, which includes the regulation, through permits, of the installation and maintenance of wires, cables, etc. Through this system, the legislature has established a scheme to (a) provide general statewide uniformity in permit fees affecting

10

telecommunications cables, and (b) to prevent any municipality from charging excessive permit fees. Because a municipal ordinance cannot supersede an act of the legislature, *see City of Atlanta v. Myers*, 240 S.E.2d 60, 63 (Ga. 1977), the district court properly enjoined enforcement of the Amended Ordinance.

The fees at issue are clearly permit fees, not franchise fees. *See* Record at Tab 6, Ex. A; Tab 6 at ¶¶ 7, 8, 10, 13 (Stipulated Facts referring to it as a "permit fee"). The word "permit" is generally synonymous with the term "license" and refers to a right granted pursuant to police and regulatory power. Because the fees are permit fees, *Dekalb County v. Georgia Power Co.*, 292 S.E.2d 709 (Ga. 1982), cited by Macon, would actually support Alltel's position, i.e., that Macon cannot charge any fees at all unless authorized by statute, and the statute places limits on what can be charged. Thus, although not considered by the district court, *DeKalb County v. Georgia Power Co.* provides an alternative basis for affirming summary judgment.

Alltel also addresses the "separation of powers" argument and contends that there is no evidence, one way or the other, of what the D.O.T intended. Moreover, because of § 32-4-92(a)(10), the intent of the D.O.T. is irrelevant. Second, the legislature has established benchmarks. It has stated that municipalities are limited to whatever the D.O.T. charges under "any equivalent regulation." As noted by

11

Macon, this ensures a uniform operating system for telecommunications companies. Since these regulations are "equivalent regulation[s]," summary judgment should be affirmed.

Next, Alltel addresses whether the Amended Ordinance provides for a "permit" or a "franchise." The Stipulated Facts state that Macon is imposing a "permit fee." A "franchise," as contemplated by the legislature, is a contractual grant of a property right from a municipality to a grantee. *See City of LaGrange*, 408 S.E.2d at 710 ("A franchise is a contract creating property rights.")(citations omitted). Typically, Alltel contends, "public utilities . . . seek franchise rights from the governing authority in the area in which it seeks to provide services to use the streets and public ways for the purposes of rendering utility services." *City of LaGrange*, 408 S.E.2d at 710 (*citing* OCGA § 36-34-2(7)). Here, the telephone poles on which Alltel installed its fiber optic cable were already lawfully located in the rights-of-way. Alltel did not apply for a franchise to provide telecommunications utility services in Macon. Rather, it obtained a permit to locate long distance trunk lines on established utility poles in the rights-of-way. Thus, it was seeking a permit, not a franchise.[5]

_____

[5] Alltel also argues that, even assuming that it was seeking a franchise, the district court was correct in holding that § 32-4-92(a)(10) limited § 36-34-2.

12

Finally, Alltel disputes Macon's assertion that the Amended Ordinance is some kind of municipal tax. Alltel cites *Camden Tel. & Tel. Co., Inc. v. City of St. Mary's*, 279 S.E.2d 200 (Ga. 1981), in which the court stated:

> We observe that the tax imposed upon the company is a business or occupation tax because it is measured by a certain category (recurring local service) of gross revenues, and because it is imposed upon the operation of the business *rather than comprising a condition precedent to engaging in the business (a license fee)*.

*Id.* at 202 (emphasis added). Here, is it undisputed that the Amended Ordinance is a condition precedent to engaging in business. *See* Record at Tab. 6, ¶ 13. Moreover, Macon points to nothing that would allow it to impose such a tax, citing *Camden Tel. & Tel.*, 279 S.E.2d at 202 (noting that "the basic power to tax belongs to the state. For a municipality to possess this power it must be conferred upon the municipality either directly in the constitution or by statute").

## Conclusion

The district court concluded, which the parties have not disputed, that there is no Georgia case law or legislative history which addresses whether fees of the type charged by Macon are limited by § 32-4-92(a) (10) or other Georgia statutes or regulations. While we have summarized the respective positions of the parties, we do not suggest how the state law(s) should be interpreted or applied. "Where there is any doubt as to the application of state law, a federal court should certify

the question to the state supreme court to avoid making unnecessary *Erie* 'guesses'

and to offer the state court the opportunity to interpret or change existing law."

*Mosher v. Speedstar Div. of AMCA Intern., Inc.*, 52 F.3d 913, 916-17 (11th Cir.

1995) (citation omitted).

We have a doubt as to the correct answer to the following question of Georgia law:

WHETHER SECTION 18-153 OF ARTICLE VII OF CHAPTER 18 OF THE CODE OF ORDINANCES OF THE CITY OF MACON, GEORGIA, AS AMENDED IN JULY 1999, IS PREEMPTED BY STATE LAW OR OTHERWISE INVALID SO AS TO PRECLUDE THE CHARGE OF THE SUBJECT FEES IN EXCESS OF THOSE PROVIDED FOR UNDER GEORGIA DEPARTMENT OF TRANSPORTATION RULE 672-11-03.

CERTIFICATION

We certify the above-styled question to the Supreme Court of Georgia. The

phrasing used in this certified question should not restrict that Court's

consideration of the problems of state law posed by this case. This extends to any

restatement of the issues by that Court and the manner in which the answer is

given. To assist that Court's consideration of the case, the entire record, along

with the briefs of the parties, shall be transmitted to the Supreme Court of Georgia.

QUESTION CERTIFIED.